1  CRAIG M. RANKIN  (SBN 169844)
   DANIEL H. REISS (SBN 150573)
2  GIL HOPENSTAND (SBN 225899)
3  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234
5  Facsimile:  (310) 229-1244

6  Attorneys for Chapter 11 Debtor
   Debtor in Possession and Plan Proponent
7

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                **(SANTA ANA DIVISION)**

12

13  In re                        ) Case No. 8-07-bk-12044-RK
                                 )
14  DAKS, LLC,                   ) In a Case Under Chapter 11 of
    a California limited         ) the Bankruptcy Code (11 U.S.C. §
15  liability company,           ) 1101 et seq.)
                                 )
16                               )
                                 ) **DISCLOSURE STATEMENT DESCRIBING**
17  Debtor and Debtor in         ) **DEBTOR'S FIRST AMENDED CHAPTER**
    Possession.                  ) **11 PLAN OF REORGANIZATION**
18                               )
                                 ) Disclosure Statement Hearing
19                               )
                                 ) Date:  April 9, 2008
20                               ) Time:  10:30 a.m.
                                 ) Place:  Courtroom 5D, 5th Floor
21                               )         411 West Fourth Street
                                 )         Santa Ana, California
22                               )         92701
                                 )
23                               ) Plan Confirmation Hearing
                                 )
24                               ) Date:  [TO BE SET]
                                 ) Time:
25                               ) Place:  Courtroom 5D, 5th Floor
                                 )         411 West Fourth Street
26                               )         Santa Ana, California
27  _____  )         92701

28

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION . . . . . . . . . . . . . . . . . .   1
     A.   Purpose of This Document. . . . . . . . . .   2
     B.   Deadlines for Voting and Objecting; Date of
          Plan Confirmation Hearing . . . . . . . . .   4
          1.   Time and Place of the Confirmation
               Hearing. . . . . . . . . . . . . . . .   4
          2.   Deadline For Voting For or Against
               the Plan . . . . . . . . . . . . . . .   4
          3.   Deadline For Objecting to the
               Confirmation of the Plan . . . . . . .   5
          4.   Identity of Person to Contact for More
               Information Regarding the Plan . . . . .   5
     C.   Disclaimer. . . . . . . . . . . . . . . . .   5
II.  BACKGROUND . . . . . . . . . . . . . . . . . . .   6
     A.   Description of the Debtor's Business. . . .   6
     B.   Events Leading to Chapter 11 Filing . . . .   9
          1.   Litigation . . . . . . . . . . . . . .   9
          2.   Commencement of Foreclosure Proceedings.  10
     C.   Significant Events During the Bankruptcy
          Case. . . . . . . . . . . . . . . . . . . .  11
          1.   Administrative Matters . . . . . . . .  11
          2.   Employment of Professionals. . . . . .  12
          3.   Legal Proceedings. . . . . . . . . . .  14
               a.   Proof of claims bar date. . . . .  14
               b.   Removal of the YSA Action and
                    Objection to the YSA claim. . . .  14
               c.   Motion to Assume Lease. . . . . .  15
               d.   YSA Motions for dismissal of case,
                    remand of YSA Action, and for
                    relief from stay. . . . . . . . .  15
               e.   Plan Exclusivity. . . . . . . . .  16
          4.   Actual and Projected Recovery of
               Preferential or Fraudulent Transfers . .  16
III. SUMMARY OF THE PLAN. . . . . . . . . . . . . . .  16
     A.   What Creditors and Interest Holders Will
          Receive Under The Plan. . . . . . . . . . .  16
     B.   Unclassified Claims . . . . . . . . . . . .  17
          1.   Administrative Expenses. . . . . . . .  17
          2.   Priority Tax Claims. . . . . . . . . .  19
     C.   Classified Claims and Interests . . . . . .  21
          1.   Classes of Secured Claims. . . . . . .  21
          2.   Classes of Priority Unsecured Claims . .  22
          3.   Classes of General Unsecured Claims. . .  23
          4.   Class(es) of Interest Holders - Class 6.  24

|   | D. | Means of Effectuating the Plan. . . . . . . . | 24 |
|---|---|---|---|
|   |   | 1. Funding for the Plan . . . . . . . . | 24 |
|   |   | 2. Post-confirmation Management . . . . . . | 25 |
|   |   | 3. Objections to Claims . . . . . . . . | 25 |
|   |   | 4. Disbursing Agent . . . . . . . . . . | 26 |
|   |   | 5. Distributions to be Made Pursuant to the Plan . . . . . . . . . . . . . . | 26 |
|   |   | a. Timing of Distributions . . . . . . | 26 |
|   |   | b. Method of Distribution. . . . . . . | 27 |
|   |   | c. Unclaimed Property. . . . . . . . | 27 |
|   |   | d. Compliance with Governmental Regulations . . . . . . . . . . . | 28 |
|   | E. | Risk Factors. . . . . . . . . . . . . . | 28 |
|   | F. | Other Provisions of the Plan. . . . . . . . | 29 |
|   |   | 1. Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . | 29 |
|   |   | a. Assumptions . . . . . . . . . . . | 29 |
|   |   | b. Rejections. . . . . . . . . . . . | 29 |
|   |   | 2. Changes in Rates Subject to Regulatory Commission Approval. . . . . . . . . . | 30 |
|   |   | 3. Retention of Jurisdiction. . . . . . . | 30 |
|   |   | 4. United States Trustee Quarterly Fees . . | 33 |
|   |   | 5. Administrative Claims Bar Date . . . . . | 33 |
|   | G. | Tax Consequences of Plan. . . . . . . . . . | 33 |
| IV. | | CONFIRMATION REQUIREMENTS AND PROCEDURES . . . . . | 34 |
|   | A. | Who May Vote or Object. . . . . . . . . . . | 35 |
|   |   | 1. Who May Object to Confirmation of the Plan . . . . . . . . . . . . . . . . | 35 |
|   |   | 2. Who May Vote to Accept/Reject the Plan . | 35 |
|   |   | a. What Is an Allowed Claim/Interest . | 35 |
|   |   | b. What Is an Impaired Claim/ Interest. . . . . . . . . . . . . | 36 |
|   |   | 3. Who is Not Entitled to Vote. . . . . . | 37 |
|   |   | 4. Who Can Vote in More Than One Class. . . | 38 |
|   |   | 5. Votes Necessary to Confirm the Plan. . . | 38 |
|   |   | 6. Votes Necessary for a Class to Accept the Plan . . . . . . . . . . . . . . | 38 |
|   |   | 7. Treatment of Nonaccepting Classes. . . . | 39 |
|   |   | 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es). . . | 39 |
|   | B. | Liquidation Analysis. . . . . . . . . . . . | 39 |
|   | C. | Feasibility . . . . . . . . . . . . . . . | 42 |
| V. | | EFFECT OF CONFIRMATION OF THE PLAN . . . . . . . | 43 |
|   | A. | Discharge . . . . . . . . . . . . . . . . | 43 |
|   | B. | Continuing Stay/Injunction. . . . . . . . . | 43 |
|   | C. | Revesting of Property in the Reorganized Debtor. . . . . . . . . . . . . . . . . . | 44 |

D.    Modification of Plan. . . . . . . . . . .    44
E.    Post-Confirmation Disposition of Property
      of the Estate . . . . . . . . . . . . . .    45
F.    Post-Confirmation Status Report . . . . . .    45
G.    Post-Confirmation Conversion/Dismissal. . . .    45
H.    Final Decree. . . . . . . . . . . . . . .    46
DECLARATION OF ARNOLD SIMON . . . . . . . . . . . .    48

# I. INTRODUCTION

DAKS, LLC is the debtor and debtor in possession (the "Debtor") in the above-captioned Chapter 11 bankruptcy case (the "Case"). On July 9, 2007 (the "Petition Date"), the Debtor commenced the Case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtor, creditors and others parties in interest to propose a plan of reorganization. A plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan of Reorganization (the "Plan") sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN.

The Plan provides for payment to all creditors in from the sale of the Debtor's real property and the pursuit of litigation claims that are property of the Debtor's estate. The primary asset of the Debtor's bankruptcy estate is real property located in the exclusive Harbor Island area of Newport Beach, California and generally described as 18 Harbor Island, Newport Beach, California 92660 (together with related improvements and leasehold interests, the "Harbor Island Property"). This Plan will be implemented by the sale of the Harbor Island Property, which will generate funding

1

for this Plan through the Debtor's substantial equity in the Harbor Island Property, as well as litigation claims to be identified by the Debtor. The effective date of this Plan (the "Effective Date") shall be the later of the (i) first business day which is at least eleven days following the date the Bankruptcy Court enters the order confirming the Plan (the "Plan Confirmation Order"), unless there is a stay in effect, in which case the Effective Date shall be the first business day after the stay is no longer in effect with respect to the Plan Confirmation Order, or (ii) the date of closing on the Sale Transaction (defined below). At any time prior to the Effective Date, the Effective Date may be modified by the Debtor upon application to the Bankruptcy Court, which modification shall not be deemed to be a modification that adversely changes the treatment of the claim of any creditor within the meaning of Federal Bankruptcy Rule 3019. The Debtor, following an order confirming the Plan, will be referred to herein as the "Reorganized Debtor."

## A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

2

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1) **WHO CAN VOTE OR OBJECT,**

(2) **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4) **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5) **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6) **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information

3

to enable parties affected by the Plan to make an informed judgment about the Plan.

**B.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.   Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, **2008 at 10:30 a.m.**, in Courtroom "5D", 5th Floor, in the United States Bankruptcy Court located at 411 West Fourth Street, Santa Ana, California 92701, before the Honorable Robert Kwan.

**2.   Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote by executing the enclosed ballot and returning the executed ballot in the enclosed envelope to:

```
Levene, Neale, Bender, Rankin & Brill L.L.P.
10250 Constellation Blvd., Suite 1700
Telephone:    (310) 229-1234
Facsimile:    (310) 229-1244
Attention:    Craig M. Rankin/Daniel H. Reiss
```

4

Your ballot must be received by _____, 2008 at 5:00 p.m. Pacific Time or it will not be counted.  The Debtor retains the right to accept late-received ballots if such ballots accept the Plan, but no ballots rejecting the Plan received after the above deadline will be counted.

> **3.    Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Debtor at the address listed in the upper left-hand corner of the first page of this Disclosure Statement by _____, 2008 at 5:00 p.m. Pacific Time.

> **4.    Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Craig M. Rankin, Esq. or Daniel H. Reiss, Esq. of Levene, Neale, Bender, Rankin & Brill L.L.P., 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067, telephone: (310) 229-1234.

> **C.    Disclaimer**

The financial data, if any, relied upon in formulating the Plan is based on the Debtor's records, which unless otherwise indicated, are unaudited.  The information contained in this Disclosure Statement has been provided solely by the Debtor.  The Debtor represents that everything

5

stated in this Disclosure Statement is true to the best of its knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II. BACKGROUND

What follows is a brief summary of the circumstances that led the Debtor to file its bankruptcy.

### A.   Description of the Debtor's Business.

The Debtor was formed for the purpose of investing in residential real property assets. The Debtor's main tangible assets are its ownership interest in the real property located at 18 Harbor Island, Newport Beach, California 92680 (the "Harbor Island Property"), related easement rights and related lease rights to certain Orange County-owned coastline (the "Lease"). The Debtor continues to manage its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

The Debtor had previously held and sold a number of residential real properties. The Debtor - based on estimates from real estate professionals - believes that the Harbor Island Property is worth in excess of $30 million. The Debtor further believes that secured debt against the Harbor Island Property is only approximately $6.5 million. The Harbor Island Property is currently occupied by Debra Simon ("Debra"), the former wife of Mr. Arnold Simon, the managing

6

member of the Debtor ("Mr. Simon"). Debra filed a Petition for Dissolution of Marriage (the "Dissolution Petition") commencing the family law matter (the "Family Court Matter") entitled In re Marriage of Simon, Case No. 04D000159, now pending in the Superior Court of the State of California, County of Orange (the "Family Court"). At the time the Dissolution Petition was filed, Debra was living in the Harbor Island Property. By Family Court orders dated January 21, 2004 and February 20, 2004, Debra was given exclusive use of the Harbor Island Property and Mr. Simon was enjoined from directly or indirectly (presumably, through the Debtor) disposing of the Harbor Island Property. The Debtor was then brought in as, and remains, a party to the Family Court Matter as a "Claimant" pursuant to the Court's order granting Debra's motion for joinder on February 27, 2004.

By that certain order on the "Stipulation Resolving Bifurcated Issues of Validity of Purported Prenuptial Agreement and for Handling of Certain Remaining Issues in the Case" entered on July 21, 2006 (the "Stipulated Order"), the Family Court prohibited the marketing of the Harbor Island Property for sale. The Stipulated Order provides at page 4, ¶ 9:

> "Pending the final resolution of the division
> of property, the Respondent [Arnold Simon]
> shall not seek, nor shall he permit DAKS to

7

1     seek, the sale or showing of the Harbor
2     Island residence without the prior written
3     consent of the Petitioner [Debra Simon]."
4         The Harbor Island Property is not generating income
5 because Debra is not paying rent to the Debtor for her
6
7 occupancy of the premises. The Debtor holds a claim against
8 Debra for, among other things, back rent not paid for over
9 three years of occupancy, the value of which occupancy
10 remains to be determined.
11         Due to the lack of income from the Harbor Island
12 Property and its substantial equity, the sale of the Harbor
13 Island Property is in the best interests of the Debtor's
14
15 creditors. Fortunately, since the filing of the Case, the
16 Debtor, Mr. Simon, and Debra reached a written agreement that
17 that provides for the consensual and orderly sale of the
18 Harbor Island Property (the "Sale Stipulation"). This
19 stipulation virtually eliminates any uncertainty with respect
20 to the authority of the Debtor to sell the real property (due
21 to limitations imposed in the in the Stipulated Order entered
22
23 in the Family Court Matter). The Debtor now intends to move
24 forward promptly to sell the Harbor Island Property and pay
25 all allowed creditors in full with interest as set forth in
26 the Plan.
27         The Debtor has filed an application with this Court for
28 authority to employ the prestigious firm of Willis Allen Real

8

1  Estate ("Willis Allen") as its real estate to market the

2  Harbor Island Property for sale.

3  **B.  Events Leading to Chapter 11 Filing.**

4  Several factors caused the filing of the Case.  The Case

5  was commenced after substantial consideration of all feasible

6  non-bankruptcy alternatives to resolve a number of issues.

7

8  **1.  Litigation.**

9  The Debtor is a defendant in two lawsuits in non-

10 bankruptcy fora which, prior to the Petition Date, were being

11 vigorously litigated by the parties: (1) Rocker v. Simon, OC

12 Sup. Ct., Case No. 05CC01936 (the "Rocker Action"); and (2)

13 YSA, LLC v. DAKS, LLC, OC Sup. Ct., Case No. 05CC08045 (the

14 "YSA Action").  The YSA Action was filed by YSA, LLC ("YSA")

15 on June 8, 2005 seeking specific performance of an expired

16 purchase agreement with the Debtor with respect to the Harbor

17 Island Property, damages for breach of said purchase

18 agreement, and certain declaratory and/or injunctive relief.

19 Due to an order in the state family court proceeding entitled

20 Simon v. Simon, OC Sup. Ct. Case No. 04D000159(the "Family

21 Court Proceeding"), pending in the Superior Court for the

22 State of California, County of Orange, YSA's failure to

23 fulfill its obligations under the purchase agreement, and the

24 expiration of the purchase agreement, the transaction was not

25 consummated.  The Debtor and YSA were ordered to arbitration

26

27

28

9

1  in the YSA Action, which arbitration was set for August 27 –

2  29, 2007.

3      The Rocker Action was filed against the Debtor and Mr.

4  Simon on January 6, 2005 by Cynthia Rocker ("Rocker").

5  Rocker is seeking various forms of relief, including specific

6
   performance, damages for breach of contract, declaratory
7
8  relief, and other various causes of action, relating to the

9  sale of certain real property previously owned for investment

10 by DAKS located at 22832 Skyview Way, Laguna Niguel,

11 California.

12          **2.   Commencement of Foreclosure Proceedings.**

13     First Federal Bank ("First Federal") is the only

14
   creditor that holds a consensual lien against the Harbor
15
16 Island Property.  First Federal has filed a proof of claim in

17 this case for approximately $6.2 million, approximately $5.9

18 million of which is principal.  As stated above, the Debtor

19 believes the Harbor Island Property is worth in excess of $30

20 million.   Therefore, there is substantial equity in the

21 Harbor Island Property.   However, due to the existence of a

22
   stipulated order in the Family Court proceedings, Mr. Simon,
23
24 as managing member, was unable to cause the Debtor to market

25 the Harbor Island Property for sale prior to the Petition

26 Date.

27     Due to the lack of rental income from the Harbor Island

28 Property and the inability to realize upon the equity in the

1  Harbor Island Property to pay creditors, the Debtor was
2  unable to make mortgage, tax and insurance payments with
3  respect to the Harbor Island Property. First Federal filed a
4  Notice of Default and Election to Sell Under Deed of Trust
5  (the "NOD") on or about June 25, 2007. Due to the claims
6  being made against the Debtor in the YSA and Rocker Actions,
7  the NOD, as well as the pre-bankruptcy difficulties that were
8  encountered with respect to obtaining the consent of Debra to
9  market the Harbor Island Property for sale (as was required
10 by the aforementioned Stipulated Order in the Family Court
11 Matter), the Debtor commenced this Case.
12
13      **C.   Significant Events During the Bankruptcy Case.**

        The following is a list of significant events that have
15 occurred during this case:
16
17      **1.   Administrative Matters**

18      The Debtor has addressed and continues to address the
19 various administrative matters with respect to the
20 commencement of, and administration of, the Case. These
21 matters included the preparation of detailed Schedules of
22 Assets and Liabilities and a Statement of Financial Affairs,
23 and the preparation of the materials required by the Office
24 of the United States Trustee, including, without limitation,
25 the 7-Day Package. A representative of the Debtor also
26 attended its initial interview with the Office of the United
27 States Trustee (the "OUST"), and the meeting of creditors
28

                                11

1  required under 11 U.S.C. § 341(a), which was concluded on
2  October 31, 2007. The Debtor continues to fulfill its
3  ongoing obligation to prepare and submit monthly operating
4  reports and interim statements, and pay quarterly fees to the
5  OUST.
6
7                    **2.    Employment of Professionals**
8       Following the commencement of the Case, the Debtor
9  sought Court authority to employ Levene, Neale, Bender,
10 Rankin & Brill L.L.P. ("LNBRB") as its bankruptcy counsel.
11 On or about September 6, 2007, the Court entered an order
12 approving LNBRB's employment.
13      The Debtor has also employed, or has filed applications
14 to employ, the following additional professionals in this
15 case:
16
17      a.   The law firm of Waldron & Olsen as special
18 litigation counsel to handle the YSA and Rocker Actions (the
19 "Waldron Firm"). The Court entered an order approving the
20 employment of the Waldron Firm on October 1, 2007.
21
22      b.   The law firm of Duane Morris LLP as special
23 litigation co-counsel with respect to the YSA Action, with
24 respect to which an application to employ was filed on
25 January 4, 2008 and is currently pending approval before the
26 Court. An objection to the application to employ Duane Morris
27 LLP has been filed by YSA, which objection is now set to be
28 heard before the Court on March 10, 2008.

c. Richard H. Golubow of the law firm of Winthrop Couchot, P.C., as the "Assister" whose involvement will be necessary with respect to certain "Consent Actions" as defined in the aforementioned Sale Stipulation, which may include: (1) the entry into any settlement or resolution of the YSA Action or any portion thereof; (2) the filing of an application or pleading in the YSA Action, other than with respect to discovery and discovery-related proceedings; (3) the entry into any agreement binding the Debtor to dispose of the Harbor Island Property; (4) the settlement of any claim or objecting to the allowance of any claim; (5) the borrowing of any funds; (6) the assumption or rejection of any executory contract or unexpired lease (except that relating to the lease of the dock adjacent to the Harbor Island Property with the City of Orange, to which Debra consents to assumption (but not as to any financing relating to cures of amounts owing)); (7) the filing of any motion, application, request or similar pleading in this bankruptcy case seeking affirmative relief (except for the filing of an opposition by the Debtor or response to any motion filed in this bankruptcy case). An application to employ the Assister was filed on January 4, 2008 and is currently pending approval before the Court. An objection to the application to employ the Assister has been filed by YSA, which objection is now set to be heard before the Court on March 10, 2008.

13

1        d.    The real estate brokerage firm of Willis Allen

2   with respect to the marketing and sale of the Harbor Island

3   Property, with respect to which an application to employ was

4   filed on January 4, 2008 and is currently pending approval

5   before the Court.   An objection to the application to employ

6   Willis Allen has been filed by YSA and Coldwell Banker, which

7   objections are now set to be heard before the Court on March

8

9   10, 2008.

10       **3.   Legal Proceedings.**

11            **a)   Proof of claims bar date.**

12       On August 8, 2007, the Debtor filed its motion to

13   establish a proof of claim bar date.   By order entered on

14   September 5, 2007, the Bankruptcy Court set a bar date of

15

16   October 31, 2007 for filing non-governmental proofs of claim.

17            **b)   Removal of the YSA Action and Objection**

18            **to the YSA claim.**

19       On October 5, 2007, the Debtor removed the YSA Action to

20   the Bankruptcy Court, which is now pending before the Court

21

22   as YSA LLC v. DAKS, LLC, Adv. No. SA 07-01331 RK.   YSA filed

23   a proof of claim in this case on October 22, 2007.   The

24   Debtor has filed an adversary proceeding against YSA entitled

25   "Complaint For: (1) Declaratory Relief, (2) Objection To

26   Claims Of YSA, (3) Expungement Of Lis Pendens, (4) Avoidance

27   Of Fraudulent Conveyance (11 U.S.C. § 3439.05, And (5)

28

14

1   Avoidance Of Fraudulent Conveyance (11 U.S.C. § 544(B)(1) and

2   Cal. Civ. Code § 3439.04," now pending before the Court as

3   Adv. No. SA 08-1011 RK (the "YSA Objection Adversary").

4                    **c)   Motion to Assume Lease.**

5

6       On October 24, 2007, the Debtor filed a motion to assume

7   the Lease, and to authorize the Debtor to borrow funds, if

8   necessary, from Mr. Simon to pay any arrearages and the

9   expenses under the Lease going forward.  The Debtor further

10  requested that the amounts loaned by Mr. Simon receive

11  administrative expense priority pursuant to 11 U.S.C. §§

12  364(b) and 503(b).  The Court found  that the Lease is

13
    residential in nature and, pursuant to 11 U.S.C. § 365(d)(2),
14
15  the Debtor is entitled to assume or reject the Lease at any

16  time before or through confirmation of a plan of

17  reorganization, including at the time of, and as part of, a

18  sale of the Property.

19             **d)   YSA Motions for dismissal of case, remand**

20                 **of YSA Action, and for relief from stay.**

21

22      YSA filed the following motions:   (1) a motion for

23  relief from stay to proceed with the arbitration with respect

24  to the removed YSA Action; (2) a motion to remand the Removed

25  Action; and (3) a motion to dismiss this case, alleging that

26  the Debtor filed this bankruptcy case in bad faith (the

27  "Motion to Dismiss).  The Debtor filed oppositions to all of

28
                                15

these motions, and all parties have filed supplemental briefing. These matters initially came on for hearing on January 18, 2008. The hearing on these matters has been continued, and is now set for hearing March 10, 2008.

### e) Plan Exclusivity.

The Debtor filed a motion to extend it exclusive right to solicit acceptances to its chapter 11 plan of reorganization. The Court granted the motion and extended this exclusivity from January 5, 2008 through and including May 5, 2008. In connection therewith, the Court ordered that an amended plan and disclosure statement be filed no later than February 28, 2008.

### 4. Actual and Projected Recovery of Preferential or Fraudulent Transfers.

The Debtor has not yet completed its investigation whether avoidance causes of action exist under chapter 5 of the United States Bankruptcy Code, the Debtor reserves all rights to bring such causes of action as it determines are viable.

### III. SUMMARY OF THE PLAN.

### A. What Creditors and Interest Holders Will Receive Under The Plan.

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to the priorities of payment provided in the Bankruptcy Code. The

16

Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

B.   **Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided in the Bankruptcy Code. As such, the Committee has not placed the following claims in a class the treatment of which is set forth below:

1.   **Administrative Expenses.**

Administrative expenses are claims for costs or expenses of administering the Debtor's chapter 11 bankruptcy case which are allowed under 11 U.S.C. § 507(a)(2). Allowed administrative expenses representing post-Petition Date liabilities incurred by Debtor shall be paid in full in accordance with the terms and conditions of the particular transactions giving rise to such liabilities and any agreements relating thereto. The Code requires that all administrative claims be paid on the Effective Date of the Plan unless a particular claimant agrees to a different treatment. While Debtor's chapter 11 bankruptcy case remains open, Debtor will continue to (i) file with the United States

17

Trustee monthly financial reports; and (ii) timely pay fees incurred pursuant to 28 U. S. C. § 1930(a)(6).

The following table lists <u>all</u> of the Debtor's administrative claims and their treatment under the Plan.

| Name | Type of Services | Amount Owed[1] | Treatment |
|---|---|---|---|
| Levene, Neale Bender Rankin & Brill, LLP | Debtor's Attorneys | $500,000(see footnote 1) | Paid upon later of Effective Date or Court approval. |
| Waldron & Olson (the "Waldron Firm") | Special Counsel | $600,000(see footnote 1) | Paid upon later of Effective Date or Court approval. |
| Richard H. Golubow | Assister | $100,000(see footnote 1) | Paid upon later of Effective Date or Court approval. |
| Duane Morris LLP | Special Counsel | $250,000 (see footnote 1) | Paid upon later of Effective Date or Court approval |
| Willis Allen Real Estate | Broker to Market and Sell Harbor Island Property | $750,000, if Harbor Island Property is sold pursuant to agreement | Paid upon later of Effective Date or Court approval |
| Clerk's Office Fees | | None | Paid in full on the Effective Date. |
| Office of the United States Trustee | | None | Paid in full on the Effective Date.[2] |
| Arnold Simon | Loans | To be determined. | Paid in full on the Effective Date. |
| TOTAL | | $2,200,000 | |

* Amounts are estimated.

The Bankruptcy Court must approve all professional fees and costs listed in this chart.  For all fees except Clerk's

1 Actual fees and expenses for professionals employed at the expense of the estate could be higher or lower than this estimate depending on the amount of legal work required to be done and necessary costs through the Effective Date.

2 The Debtor or Reorganized Debtor shall be responsible for timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) until entry of a final decree closing the Debtor' Chapter 11 case.

18

1  Office fees, U.S. Trustee's fees, each professional must file
2  and serve a properly noticed application for payment of fees
3  and reimbursement of expenses, and the Bankruptcy Court must
4  rule on the application.  Only the amount of fees and costs
5  allowed by the Bankruptcy Court will be required to be paid
6
7  under this Plan.    The  last  day  to  file  chapter  11
8  administrative claims  (except  for  professional  fees  and
9  expenses) shall be 30 days after an order is entered
10  confirming the Plan.  All administrative expenses will be
11  paid on the later of the Effective Date or 10 days after the
12  entry of a non-appealable order allowing the administrative
13  expense.
14
15      **2.   Priority Tax Claims.**   Priority tax claims include
16  certain income, employment and other taxes described by 11
17  U.S.C. § 507(a)(8) not secured by a lien in the Debtor's
18  assets.   The Bankruptcy Code requires that each holder of
19  such a Section 507(a)(8) priority tax claim receive the
20  present value of such claim in regular installment payments
21  in cash (i) of a total value, as of the Effective Date of the
22
23  Plan, equal to the allowed amount of such claim; (ii) over a
24  period ending not later than five (5) years after the
25  Petition Date; and (iii) in a manner not less favorable than
26  the most favored nonpriority unsecured claim provided for
27  under the Plan. The following table lists all of Debtor's §
28

19

507(a)(8) priority tax claims and its treatment under this Plan:

| DESCRIPTION OF CLAIM | TREATMENT |
|---|---|
| Claimant:<br>New Jersey Dept. of Taxation<br><br>Date(s) of assessment:<br><br>Total amount of allowed priority claim as of the Petition Date:<br>$900.00 plus interest. | Frequency of payments:<br>Paid in full on Effective Date<br><br>Total yearly payments: N/A<br><br>Final payment date:<br>Effective Date<br><br>Total amount of payments to satisfy the claim =<br>$900.00 plus interest. |
| Claimant:<br>California Franchise Tax Board<br><br>Date(s) of assessment: 2004 - 2007 tax years<br><br>Total amount of allowed priority claim as of the Petition Date:<br>$2,366.37 (est. based on proofs of claim filed) | Frequency of payments:<br>Paid in full on Effective Date<br><br>Total yearly payments: N/A<br><br>Final payment date:<br>Effective Date<br><br>Total amount of payments to satisfy the claim =<br>$2,366.37 (est. based on proofs of claim filed) |
| Claimant:<br>Orange County Treasurer - Tax Collector - personal property tax<br><br>Date(s) of assessment: 2007<br><br>Total amount of allowed priority claim as of the Petition Date:<br>$2,699.45 (est. based on proofs of claim filed) | Frequency of payments:<br>Paid in full on Effective Date<br><br>Total yearly payments: N/A<br><br>Final payment date:<br>Effective Date<br><br>Total amount of payments to satisfy the claim =<br>$2,669.45 (est. based on proofs of claim filed) |
| TOTAL UNSECURED TAX CLAIMS | $6,040.82 |

**C.    Classified Claims and Interests.**

Other claims are classified for purposes of voting, confirmation and distribution pursuant to this Plan.

| CLASS NO. | CLASS NAME | Impaired (Y/N) |
|---|---|---|
| 1 | Orange County Treasurer – Tax Collector (secured) | NO |
| 2 | First Federal Bank | NO |
| 3 | Coldwell Banker Residential Brokerage | NO |
| 4 | General Unsecured claims, not separately classified. | NO |
| 5 | General Unsecured Claim of YSA LLC | NO |
| 6 | Interest Holders | NO |

**1.    Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the bankruptcy estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| Class No. 1 | Secured | Orange County Treasurer | Non-Insider | Unimpaired | Undisputed |
|---|---|---|---|---|---|

Amount: $162,803.23

Collateral and Value: Harbor Island Property/in excess of $30,000,000.00

Priority: First - statutory lien priority

Principal & Interest Payments: Lump sum payment.

1

2    <u>Treatment:</u>  Class 1 shall be paid in the full amount of its
     allowed claim on the Effective Date.

3

4

5    | Class No. 2 | Secured | First Federal Bank of California | Non-Insider | Unimpaired | Disputed |
6

7    Principal owed:  $5,875,464.23

8    Collateral and Value: Harbor Island Property/in excess of
     $30,000,000.

9    Priority: Holder of first deed of trust

10   Arrearages: $366,999.72 (per proof of claim filed - disputed)
     Treatment: Class 2 shall be paid in the full amount of its
11   allowed claim on the Effective Date.

12   | Class No. 3 | Secured | Coldwell Banker Residential Brokerage | Non-Insider | Unimpaired | Disputed |
13

14   Amount: Unknown.  Proof of claim filed for $662,500 for alleged
     commissions owed which are disputed by Debtor.
15

16   Alleged collateral: Proceeds of sale of Harbor Island Property.

17   Priority: Unknown

18   Arrearages: None.
     Treatment: Class 3 shall be paid in the full amount of its
     allowed claim on the Effective Date. However, see Risk Factors in
19   Section III.E, below.

20

21          **2.    Classes of Priority Unsecured Claims.**

22          Certain priority claims that are referred to in Code

23   Sections 507(a)(3), (4), (5), (6) and (7) are required to be

24   placed in classes. These types of claims are entitled to

25   priority treatment inasmuch as the Code requires that each

26   holder of such a claim receive cash on the Effective Date

27   equal to the allowed amount of such claim.  However, a class

28

                                22

of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.

Debtor has no claims entitled to priority under Code section 507(a)(4), (5), (6) and (7). The following table describes the treatment and classification of Debtor's Code section 507(a)(3) priority claims:

### 3.   Classes of General Unsecured Claims.

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims:

| Class No. 4 | Unsecured Claims | Unimpaired | Non-insider |
|---|---|---|---|
| Type: All general unsecured claims not separately classified herein.  See Exhibit "A" hereto. | | | |
| Amount:  The total amount of Class 4 creditors is unknown at this time, as this Class includes certain pending litigation and other unliquidated and/or contingent claims.  The Debtor will, if necessary, petition the bankruptcy court to estimate certain claims in connection with confirmation.  This class includes and unsecured claim for loans made by Mr. Simon to the Debtor of over $3 million over a period of approximately six years.  This class also includes a $15,225,000 claim filed by Elizabeth C. Adams, Trustee of Carver Trust No. 1 dated September 22, 1988 and Leroy L. Carver III based on a first right of refusal with respect to the Harbor Island Property. | | | |
| Treatment:  Class 4 creditors shall be paid in full on the later of the Effective Date or the date that a creditor's claim is allowed. The post-petition, pre-confirmation interest shall be calculated at the federal statutory rate under 28 U.S.C. § 1961(a).  The post-confirmation interest rate shall be such rate that the Court determines leaves this Class unimpaired. However, see Risk Factors in Section III.E, below. | | | |

23

| Class No. 5 \| Unsecured Claim of YSA, LLC \| Unimpaired \| Non-insider |
|---|

| Type:  Claim of YSA LLC with respect the YSA Action. |
|---|
| Amount: Unknown |
| Treatment:  Same as Class 4 creditors, except payment date and amount is contingent on the outcome of pending litigation between the Debtor and YSA, LLC.  The post-petition, pre-confirmation interest shall be calculated at the federal statutory rate under 28 U.S.C. § 1961(a).  The post-confirmation interest rate shall be such rate that the Court determines leaves this Class unimpaired. See Risk Factors in Section III.E, below. |

### 4.    Class(es) of Interest Holders - Class 6.

Class 6 interest holders shall retain their equity interests and are unimpaired.

### D.    Means of Effectuating the Plan.

As stated above, the Debtor has filed an application to employ Willis Allen as the Debtor's real estate agent, to list and market the Harbor Island Property for sale to maximize the value that can be realized from the Harbor Island Property for creditors and equity holders.  With respect to all other assets, including potential litigation claims, such assets shall be disposed of by the Debtor or the Reorganized Debtor (as defined below), as the case may be, in the best interest of creditors and equity holders.

### 1.    Funding for the Plan.

The Plan will be funded by the following:

a.    Cash on hand on the Effective Date;

24

b.    Proceeds from litigation, including, but not limited to, the Rocker Action, bankruptcy avoidance actions, and collection of unpaid rent from Debra; and/or

c.    Proceeds from the pre- or post-confirmation sale or other disposition of assets of the estate.

**2.    Post-confirmation Management.**

Following confirmation of the Plan, the Debtor shall be referred to as the "Reorganized Debtor." The post-confirmation management of the Reorganized Debtor shall consist of Mr. Arnold Simon, managing member of the Reorganized Debtor, subject to the terms of the Sale Stipulation. The Board of Directors of the Reorganized Debtor shall remain and be constituted in the manner set forth in its bylaws.

**3.    Objections to Claims**

The Debtor or the Reorganized Debtor, as the case may be, shall review all claims filed or deemed filed and may object to or seek subordination of any claim filed or scheduled in this bankruptcy case (unless the Court has already entered an order allowing a claim). The Reorganized Debtor will file any objections to claims no later than 90 days following the Effective Date. Such claims that are disputed and have not yet been allowed shall be referred to herein as "Disputed Claims." As provided by Section 502(c) of the Bankruptcy Code, the Court may estimate any contingent

25

1  or unliquidated disputed claim for purposes of confirmation

2  of the Plan. The Court shall retain jurisdiction over the

3  Reorganized Debtor and the Case to resolve such objections to

4  claims following the confirmation of the Plan.

5

6      Nothing contained in the Plan shall constitute a waiver

7  or release by the Debtor or Reorganized Debtor of any rights

8  of setoff or recoupment, or of any defense, that they may

9  have with respect to any claim (including, without

10 limitation, rights under Section 502(d) of the Bankruptcy

11 Code).

12              **4.   Disbursing Agent.**

13     The Reorganized Debtor shall act as the disbursing agent

14 for the purpose of making all distributions provided for

15 under the Plan (the "Disbursing Agent"), except for those

16 payments to be made on the Effective Date, which shall be

17 made by the Reorganized Debtor.   The Disbursing Agent shall

18 serve without bond and without compensation for distribution

19 services rendered in connection with the Plan.

20

21          **5.   Distributions to be Made Pursuant to the Plan**

22              **a)   Timing of Distributions**

23     Distributions to be made by the Disbursing Agent on

24 account of any claim shall be made as set forth in the Plan,

25 or as promptly thereafter as practicable.

26

27

28

                                26

### b) **Method of Distribution**

The Disbursing Agent shall make all distributions by check drawn on a domestic bank or by wire transfer, at the sole election of the Disbursing Agent. The Disbursing Agent shall make such distributions to the address shown on the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or to a different address as set forth in a proof of claim duly filed with the Court.

### c) **Unclaimed Property**

Payments made pursuant to the terms of the Plan that are unclaimed as of three months following the date on which such distributions are made, whether because such payments have been returned as undeliverable without a proper forwarding address, will be referred to herein as "Unclaimed Property". During the three months following the date any distribution is made pursuant to the Plan (the "Claiming Period"), Unclaimed Property shall be distributed to the holders of allowed claims entitled thereto upon presentment to the Disbursing Agent of satisfactory proof of entitlement. Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Disbursing Agent by the holder of the allowed claim to whom such check was

1 | originally issued prior to the expiration of the Claiming
2 | Period. On the first day after the expiration of the
3 | Claiming Period: (i) holders of allowed claims previously
4 | entitled to such Unclaimed Property (including, but not
5 | limited to, the holder of any such claim who has failed to
6 |
7 | make a timely request for reissuance of a voided check) shall
8 | no longer be entitled to any payment on account of its
9 | allowed claim; (ii) such claims shall be deemed disallowed
10 | for all purposes; and (iii) the then remaining cash
11 | constituting Unclaimed Property with respect to such
12 | distribution shall be available for use for any legitimate
13 | purpose with respect to the implementation and administration
14 | of the Plan.
15 |

**d)    Compliance with Governmental Regulations**

In connection with the Plan and any instruments issued
in connection therewith, the Reorganized Debtor shall comply
with all applicable withholding and reporting requirements
imposed by any federal, state or local taxing authority, and
all distributions under the Plan shall be subject to any such
withholding or reporting requirements.

**E.    Risk Factors.**

The Debtor's Plan consists of the sale of the Harbor
Island Property and pursuing such litigation claims as the
Debtor believes will increase the amount of funds available
for payments to creditors. The risk factors in connection

28

with the consummation of this Plan include, but are not limited to: (1) third party claims interfering with the management and disposition of the Harbor Island Property, including but not limited to pending claims of YSA for an unknown amount of damages or, alternatively, specific performance, and those of Elizabeth C. Adams, Trustee of Carver Trust No. 1 dated September 22, 1988 and Leroy L. Carver III in the amount of $15,225,000 with respect to an alleged first right of refusal; (2) due to market forces, the Reorganized Debtor may be unable to dispose of the Harbor Island Property or obtain financing in a timely fashion; (3) an unforeseen, precipitous and monumental devaluation of the Harbor Island Property; and (4) if the Court grants the pending Motion to Dismiss.

F.    **Other Provisions of the Plan.**

1.    **Executory Contracts and Unexpired Leases.**

a)    **Assumptions.**

The Debtor does not assume any of its unexpired leases or executory contracts under the Plan; however, the Debtor may assume any such unexpired leases or executory contracts by way of noticed motion filed by the Debtor prior to the Effective Date.

b)    **Rejections.**

The Debtor does not reject any of its unexpired leases or executory contracts under the Plan; however, the Debtor

may reject any such unexpired leases or executory contracts by way of noticed motion filed by the Debtor prior to the Effective Date. THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED WILL BE TEN (10) DAYS AFTER DATE OF ENTRY OF THE BANKRUPTCY COURT ORDER APPROVING SUCH REJECTION. Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise. To the extent any claims are filed based on rejection of executory contracts or unexpired leases, such claims shall be treated as Class 4 general unsecured claims.

### 2. Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 3. Retention of Jurisdiction

Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for all of the following purposes, plus such other purposes as may be provided by the Bankruptcy Code and by other Orders of the Court:

a. To resolve any and all disputes regarding the operation and interpretation of the Plan and the order confirming the Plan (the "Confirmation Order");

b. To determine the allowability, classification, or

30

priority of claims arising prior to the Effective Date;

c.   To determine the extent, validity and priority of any lien asserted against any assets of the Debtor's bankruptcy estate arising prior to the Effective Date;

d.   To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court issued in this Case; to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order; and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date with respect to any person or entity related thereto;

e.   To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan or the Confirmation Order;

f.   To determine, to the extent necessary, any and all Professional Fee Applications;

g.   To determine any and all Administrative Claims;

h.   To determine motions, filed before the Effective Date, for the rejection, assumption, or assignment of any executory contracts or unexpired leases not otherwise assumed or rejected under the Plan, as well as the allowance of any Claims resulting therefrom;

i.   To determine all applications, motions, adversary

31

proceedings, contested matters, and any other litigated matters relating to this Case and instituted during the pendency of this Case, whether before, on, or after the Effective Date, including, but not limited to avoidance causes of action under 11 U.S.C. §§ 544 through 550;

j.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

k.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan such as may be necessary to effectuate its expressed intent and purpose;

l.    Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions or to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or to facilitate the execution or implementation by any person or entity of the Plan or the Confirmation Order;

m.    To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

n.    to hear and determine any and all matters regarding

32

the Reorganized Debtor's rights and responsibilities, and issues relating to his discharge; and

o.    To enter a final decree closing this Case.

## 4.    United States Trustee Quarterly Fees

The Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). After confirmation, Reorganized Debtor shall file with the Court and serve on the United States Trustee quarterly financial reports regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) that the case remains open.

## 5.    Administrative Claims Bar Date

The last day for claimants to file an administrative claim with the exception of professionals who have provided services to the estate, shall be thirty (30) days following the entry of a final order confirming the Plan.  If any such administrative claim is not filed in a timely manner it shall be disallowed in its entirety.

## G.    Tax Consequences of Plan.

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH ITS OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.

33

The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action. Nonetheless, the Debtor anticipates that, to the extent the Harbor Island Property is sold or otherwise disposed of, such disposition may constitute a taxable event for the Debtor or Reorganized Debtor, as the case may be. As a California limited liability company, the sale of the Harbor Island Property will not be a taxable event for the Debtor or the Reorganized Debtor for federal tax purposes. However, the Debtor expects that California state taxes will be withheld at a rate of 11% on the net taxable gain from a sale, estimated as follows:

| | |
|---|---|
| Sales Price (est.): | $30,000,000 |
| Debtor's cost basis: | <$14,000,000> |
| Costs of sale (est. 6%) | <$ 1,800,000> |
| Net taxable gain | $14,200,000 |
| Withholding Tax (approx.) | $ 1,562,000 |

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES.

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THE PLAN SHOULD CONSULT WITH ITS OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they

34

1  may wish to consider, as well as certain deadlines for filing
2  claims. The Debtor CANNOT and DO NOT represent that the
3  discussion contained below is a complete summary of the law
4  on this topic.
5
6       Many requirements must be met before the Court can
7  confirm the Plan. Some of the requirements include that the
8  Plan must be proposed in good faith, acceptance of the Plan,
9  whether the Plan pays creditors at least as much as creditors
10 would receive in a Chapter 7 liquidation, and whether the
11 Plan is feasible. These requirements are not the only
12 requirements for confirmation.
13
       **A.   Who May Vote or Object.**
14
            **1.   Who May Object to Confirmation of the Plan**
15
16      Any party in interest may object to the confirmation of
17 the Plan, but, as explained below, not everyone is entitled
18 to vote to accept or reject the Plan.
19
            **2.   Who May Vote to Accept/Reject the Plan**
20
       A creditor or interest holder has a right to vote for or
21
   against the Plan if that creditor or interest holder has a
22
   claim which is both (1) allowed or allowed for voting
23
   purposes and (2) classified in an impaired class.
24
            **a) What Is an Allowed Claim/Interest**
25
26      As noted above, a creditor or interest holder must first
27 have an allowed claim or interest to have the right to vote.
28 Generally, any proof of claim or interest will be allowed,

35

1 unless a party in interest brings a motion objecting to the
2 claim.   When an objection to a claim or interest is filed,
3 the creditor or interest holder holding the claim or interest
4 cannot vote unless the Court, after notice and hearing,
5 either overrules the objection or allows the claim or
6 interest for voting purposes.
7

8 THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE
9 for non-governmental entities was October 31, 2007.   A
10 creditor or interest holder may have an allowed claim or
11 interest even if a proof of claim or interest was not timely
12 filed.   A claim is deemed allowed if (1) it is scheduled on
13 the Debtor's schedules and such claim is not scheduled as
14 disputed, contingent, or unliquidated, and (2) no party in
15 interest has objected to the claim.   An interest is deemed
16 allowed if it is scheduled and no party in interest has
17 objected to the interest. Consult the foregoing Plan Summary
18 and Exhibit "A" to see how the Debtor has characterized your
19 claim or interest.
20

21 **b) What Is an Impaired Claim/Interest**
22 As noted above, an allowed claim or interest only has
23 the right to vote if it is in a class that is <u>impaired</u> under
24 the Plan.   A class is impaired if the Plan alters the legal,
25 equitable, or contractual rights of the members of that
26 class. For example, a class comprised of general unsecured
27
28

36

claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Debtor believes that all classes are unimpaired and, therefore, no holders of claims are entitled to vote to accept or reject the Plan. Parties who dispute the Debtor's characterization of its claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

### 3.    Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. Unimpaired Classes under the Plan are therefore not entitled

37

to vote on the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV.A.8.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

38

## 7.   Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Bankruptcy Code.   The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."   The Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.   Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The Debtor will ask the Court to confirm the Plan by cramdown on impaired classes if such classes do not vote to accept the Plan.

### B.   Liquidation Analysis.[3]

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.   Under the Best Interest Test, if a claimant or interest holder is in an

---

[3]   This Liquidation analysis is subject to "Risk Factors" in Section III.E., hereof.

impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to its rights to priority.   Unsecured creditors with the same priority share in proportion to the amount of its allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement is clearly met here.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as

40

1  much under the Plan as such creditor or interest holder would

2  receive under a Chapter 7 liquidation.  This information is

3  provided by the Debtor.

4

5

6  **ASSETS AT LIQUIDATION VALUES:**
   CURRENT ASSETS

| | | |
|---|---|---|
| a. Checking, savings and other financial accounts | $ | 1,000 |
| b. Claims against Debra Simon | $ | Unknown |
| c. Claims against Rocker in Rocker Action | $ | Unknown |
| d. Claims against YSA | $ | Unknown |
| TOTAL CURRENT ASSETS | $ | Unknown |

FIXED ASSETS[4]

| | | |
|---|---|---|
| a.            Harbor Island Property | $ | 30,000,000 |
| | $ | 30,000,000 |
| TOTAL FIXED ASSETS | | |
| | $ | 30,001,000 |
| **TOTAL ASSETS AT LIQUIDATION VALUE (at least, estimate)** | | ============= |

**Less:**

SECURED CREDITOR'S RECOVERY

| | | |
|---|---|---|
| 1.   First Federal Bank  (holder of 1st deed of trust) (approx. amount claimed/disputed) | $ | 6,200,000 |
| 2.   Orange County Property Taxes | $ | 162,830 |
| 3.   Coldwell Banker Residential Brokerage | $ | None |
| TOTAL SECURED DEBT: | $ | 6,362,830 |
| **ASSETS NET OF SECURED DEBT** | $ | **23,638,170** |
| | | ============= |

**Less:**

| | | |
|---|---|---|
| Chapter 7 trustee fees and expenses (approx.)(including professionals employed by the Chapter 7 trustee) | $ | 1,700,000[5] |
| Chapter 11 administrative expenses | $ | 2,200,000 |

---

[4]  The fair market value listed herein is as of the Petition Date.

[5]    Calculated as follows: pursuant to 11 U.S.C. § 326(a) -- assuming $23,638,170 in distributions -- 25% of the first $5,000 in distributions ($1,250), 10% of the next $45,000 in distributions ($4,500), 5% of the remaining $950,000 in distributions ($47,500), and 3% of the next $22,638,170 ($679,145), equals $732,395 plus $1,000,000 in attorneys' fees.

41

| State taxes on sale of Harbor Island Property | $ | 1,562,000 |
| Priority tax claims | $ | 6,041 |
| (1) Balance for general unsecured claims | $ | 18,170,129 |
| (2) Total amount of general unsecured claims | $ | Unknown |

**% OF ITS CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 100%**

**% OF ITS CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THE PLAN: = 100%**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Ch. 11 Administrative Claims | 100% | 100% |
| Priority Tax Claims | 100% | 100% |
| Class 1 (Secured) | 100% | 100% |
| Class 2 (Secured) | 100% | 100% |
| Class 3 (Secured) | 100% | 100% |
| Class 4 (Unsecured) | 100% | 100% |
| Class 5 (Unsecured) | 100% | 100% |
| Class 6 (Interest Holders) | 100% | 100% |

### C. Feasibility.

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

42

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on such date. The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor maintains that both aspects of feasibility are satisfied because the Debtor has substantial equity in the Harbor Island Property which shall be the primary source for payments under the Plan.

### V. EFFECT OF CONFIRMATION OF PLAN

#### A.    Discharge.

When all payments required to be made under the Plan have been made, the Debtor shall automatically receive a discharge to the extent specified in 11 U.S.C. § 1141. However, any liability imposed by the Plan will not be discharged.

#### B.    Continuing Stay/Injunction.

The automatic stay is lifted upon confirmation as to property of the bankruptcy estate. However, the stay continues to prohibit collection or enforcement of prepetition claims against the Reorganized Debtor or the Reorganized Debtor's property until the date the Reorganized Debtor receives a discharge, if any. Therefore, all parties

43

bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their pre-petition claims against the Reorganized Debtor as set forth herein, and as otherwise provided by operation of law, until the earlier of: (1) the bankruptcy case is closed; (2) the bankruptcy case is dismissed; or (3) the Debtor receives a discharge.

**C.   Revesting of Property in the Reorganized Debtor.**

The confirmation of the Plan revests all of the property of the bankruptcy estate in the Reorganized Debtor.

**D.   Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan, unless the modification relates only to the extension of the Effective Date, which modification shall not require a new disclosure statement and/or re-voting on the Plan.

The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

44

E.    **Post-Confirmation Disposition of Property of the Estate.**

Upon the entry of an order confirming the Plan, the Reorganized Debtor shall have unlimited ability to lease or refinance the Harbor Island Property pending a sale. In addition, the Reorganized Debtor need not seek Court approval to sell the Harbor Island Property, or to refinance or lease the Harbor Island Property after entry of an order confirming the Plan. With respect to the disposition of any other assets after entry of an order confirming the Plan, the Reorganized Debtor can dispose of its assets, including settlement of litigation claims, without need to seek Court approval.

F.    **Post-Confirmation Status Report.**

Within 120 days of the entry of the order confirming the Plan, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

G.    **Post-Confirmation Conversion/Dismissal.**

A creditor or party in interest may bring a motion to convert or dismiss the Case under § 1112(b) after the Plan is

45

confirmed if there is a default in performing the Plan. If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate.

The Plan Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Plan Confirmation Order if it was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

### H.   **Final Decree**.

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor or other parties as the Court shall designate in the order confirming the Plan, shall file a motion with the Court to obtain a final decree to close the Case. The Debtor shall be responsible for timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6). Following the Effective

///

///

1    Date, the Reorganized Debtor shall file with the Court and

2    serve on the Office of the United States Trustee quarterly

3    financial reports for each month until the Case is closed.

4                                DAKS, LLC

5

6    Dated: February 28, 2008        (Signature page attached.)

7                                    By:  Arnold Simon, Managing
                                     Member

8    LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

9

10   By:

11       CRAIG M. RANKIN
         DANIEL H. REISS
12       GIL HOPENSTAND
         Attorneys for DAKS LLC
13       Debtor in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                47

Date, the Reorganized Debtor shall file with the Court and serve on the Office of the United States Trustee quarterly financial reports for each month until the Case is closed.

DAKS, LLC

Dated: February 27, 2008

By: Arnold Simon, Managing
Member

LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

By:

CRAIG M. RANKIN
DANIEL H. REISS
GIL HOPENSTAND
Attorneys for DAKS LLC
Debtor in Possession

47

1

## DECLARATION OF ARNOLD SIMON

2

I, Arnold Simon, hereby declare as follows:

3

1.    I am an individual over the age of 18 years old.  I

4

am the managing member of DAKS, LLC, the debtor in possession

5

in the above-captioned chapter 11 bankruptcy estate (the

6

"Debtor").    The  Debtor  filed  a  voluntary  chapter  11-

7

bankruptcy petition on July 9, 2007, commencing the above-

8

captioned Chapter 11 bankruptcy case.  As managing member of

9

10  the Debtor, I am intimately familiar with the Debtor's

11  business and finances.

12
2.    I have personal knowledge of the facts set forth

13
herein, and, if called as a witness, I could and would

14
testify competently with respect thereto.   Where facts are

15
alleged upon information and belief, I believe it to be true.

16

17  3.    I make this Declaration in support of the annexed

18  Disclosure  Statement  (the  "Disclosure  Statement")  that

19  describes the Debtor's Chapter 11 Plan of Reorganization (the

20  "Plan").

21
4.    To  the  best  of  my  knowledge,  information  and

22
belief, all of the information contained in this Disclosure

23
Statement is truthful and accurate.

24

25

26

27

28

48

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this _____ day of February __, 2008 at New York, New York.

_____

ARNOLD SIMON

# EXHIBIT "A"

**CLASSIFIED CLAIMS: GENERAL UNSECURED CLAIMS**
(* D/C/U = Disputed, Contingent, Unliquidated)

| Name | SCHEDULED UNSECURED CLAIMS | | FILED UNSECURED CLAIMS | | | Comments |
|---|---|---|---|---|---|---|
| | Amount | D/C/U* | Amount | Disputed Unsecured Claim | Allowed Unsecured Claim | |
| AMERICAN INTERNATIONAL COS. | $0.00 | | $0.00 | | $0.00 | Scheduled as "unknown", no proof of claim filed. |
| COUNTY OF ORANGE | $38,053.00 | | $28,752.06 | | $28,752.06 | May be paid off in connection with assumption of underlying lease.  Motion to assume pending as of the date of filing of Plan. |
| HARBOR ISLAND COMMUNITY ASSOCIATION | | | $3,567.95 | | | |
| CYNTHIA ROCKER | | $0.00 | D/C/U* | | | | To be determined in pending lawsuit. |
| ARNOLD SIMON | $2,865,000.00 | | | | $3,000,000.00 | Claim per schedules to be amended to an amount in excess of $3 million. |
| DEBRA SIMON | | $0.00 | D/C/U* | | | $0.00 | |
| WALDRON & OLSEN, LLP | $113,099.39 | | | | $113,099.39 | |
| YSA, LLC | | $0.00 | D/C/U* | | | $0.00 | To be determined in pending lawsuit. |
| Elizabeth C. Adams, Trustee of Carver Trust No. 1 | | $0.00 | D/C/U* | $15,250,000.00 | $15,250,000.00 | $0.00 | Based on an unexercised first right of refusal |
| | **TOTAL CLAIMS** | | | | | |

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

On February 28, 2008, I served the foregoing document(s) described as:

DISCLOSURE STATEMENT DESCRIBING DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

SEE ATTACHED SERVICE LIST

__X__ (By Mail) I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail. Executed on February 28, 2008 at Los Angeles, California.

_____ (By Federal Express/Overnight Mail) I caused such envelope to be delivered by Federal Express (or Express Mail), next business day delivery to the offices of the on the attached list. Executed on February __, 2008, at Los Angeles, California.

_____ (By Facsimile) I caused said document to be sent via facsimile to the offices of the addressees so designated on the attached list. Executed on February __, 2008, at Los Angeles, California.

_____ (By E-mail) I caused such envelope to be delivered via email to the addressees on the attached list. Executed on February __, 2008, at Los Angeles, California.

_____ (By Personal service) I caused such envelope to be delivered by hand to the offices of the addressee so designated on the attached list. Executed on February __, 2008 at Los Angeles, California.

_____ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__ (Federal) I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

John Berwick

In re DAKS, LLC
USBC Case No. SA07-12044-RK
RSN

Debtor
DAKS, LLC
c/o Arnold Simon
525 Seventh Avenue, Suite 307
New York, NY 10018

U.S. Trustee - Santa Ana
411 West Fourth Street
Suite 9041
Santa Ana, CA 92701-8000

RSN-Counsel for Debra A. Simon
Stephen Kolody, William Glucksman
Kolodny & Anteau
9100 Wilshire Blvd
Ninth Floor, West Tower
Beverly Hills, CA 90212-3425

RSN-Counsel for Debra A. Simon
Christopher Celentino, Esq.
DUANE MORRIS
101 West Broadway, Suite 900
San Diego, CA 92101

RSN-Counsel for Orange County Treasurer-Tax
Collector and County of Orange
James C. Harman, Senior Deputy
Orange County Counsel
333 West Santa Ana Blvd., Suite 407
PO Box 1379
Santa Ana, CA 92702-1379

RSN-Counsel for First Federal Bank of CA
Melissa Coyle, Esq.
Epport, Richman & Robbins, LLP
1875 Century Park Est, Suie 800
Los Angeles, CA 90067-2512

~~RSN - Counsel for YSA, LLC~~
~~Robbin L. Itkin, Esq/Katherine C. Piper, Esq.~~
~~Steptoe & Johnson LLP~~
~~2121 Avenue of the Stars, Suite 2800~~
~~Los Angeles, CA 90067~~

RSN – Counsel for YSA, LLC
Paul L. Gale, Esq.
Ross, Dixon & Bell
5 Park Plaza, Suite 1200
Irvine, CA 92614

RSN-Counsel for Leroy L. Carver III
Glenn D. Dassoff, Esq./John Schafer, Esq.
Paul, Hastings, Janofsky & Walker LLP
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626

RSN-Counsel for YSA, LLC
Oscar Garza, Esq./Kenneth Glowacki, Jr., Esq.
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412

RSN-Counsel to YSA, LLC
Jacqueline Le, Esq.
660 Newport Center Drive, Suite 650
Newport Beach, CA 92660

RSN-Counsel for Coldwell Banker Residential
Brokerage
Jeanne M. Jorgensen, Esq.
Page & Jorgensen LLP
5160 Campus Drive
Newport Beach, CA 92660

Special Litigation Counsel
Gary Waldron, Esq.
Waldron & Olson L.L.P.
26 Corporate Plaza Drive
Newport Beach, CA 92660

Proposed Professional
Richard H. Golubow, Esq.
WinthropCouchot, P.C.
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660