1  CRAIG M. RANKIN (SBN 169844)
2  DANIEL H. REISS (SBN 150573)
   GIL HOPENSTAND (SBN 225899)
3  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
   10250 Constellation Blvd., Suite 1700
4  Los Angeles, California 90067
   Telephone: (310) 229-1234
5  Facsimile: (310) 229-1244

6
   Attorneys for Chapter 11 Debtor
7  and Debtor in Possession, DAKS, LLC

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                  SANTA ANA DIVISION

10
   In re:                          )  Case No. 8:07-bk-12044-RK
11                                  )
   DAKS, LLC,                       )  Chapter 11
12  a California limited liability company,  )
                                    )  **NOTICE OF MOTION AND MOTION**
13                                  )  **BY DEBTOR AND DEBTOR IN**
                                    )  **POSSESSION TO EXTEND**
14  Debtor and Debtor in Possession. )  **EXCLUSIVE PERIOD TO OBTAIN**
                                    )  **ACCEPTANCES TO CHAPTER 11**
15                                  )  **PLAN; MEMORANDUM OF POINTS**
                                    )  **AND AUTHORITIES; DECLARATION**
16                                  )  **OF DANIEL H. REISS IN SUPPORT**
                                    )  **THEREOF**
17                                  )
18                                  )
                                    )  Date:  September 9, 2008
19                                  )  Time:  2:30 p.m.
                                    )  Place: Courtroom 5D
20                                  )         411 West Fourth Street, 5th Floor
                                    )         Santa Ana, California 92701
21                                  )
   _____  )
22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES............................................   4

I.      INTRODUCTION....................................................................................   4

II.     STATEMENT OF FACTS.........................................................................   7

        A.      Background...............................................................................   7

        B.      The Debtor's Pre-Petition Attempts to Sell the Harbor Island Property
                And The Multiple Claims Relating Thereto.........................................   8

        C.      Litigation With Cynthia Rocker And Other Claims Against The Debtor....  10

        D.      The Debtor Has Timely Filed Two Chapter 11 Plans That Provide For
                The Sale of the Harbor Island Property; However, Due To The
                Approved Stipulation With YSA, The Debtor Is Currently
                Prevented From Prosecuting Its Amended Plan And Disclosure
                Statement .................................................................................  11

III.    DISCUSSION.........................................................................................  13

        A.      The Court Has Authority To Extend The Debtor's Exclusive Periods
                To File A Plan And Obtain Acceptances Thereof...............................  13

        B.      The Size And Complexity Of The Debtor's Case Support Extensions
                Of The Debtor's Plan Exclusivity Periods.......................................  15

        C.      The Extension Requested Herein Is In Good Faith, And Not For The
                Purpose Of Pressuring Creditors To Accede To Plan Terms.................  16

        D.      Progress Towards Reorganization And Proper Motives Warrant An
                Extension Of The Debtor's Plan Exclusivity Periods..........................  18

IV.     CONCLUSION.......................................................................................  19

DECLARATION OF DANIEL REISS...................................................................  20

i

1

## TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

In re AmKo Plastics, Inc.

5

    197 B.R. 74 (Bankr. S.D. Ohio 1996) ------------------------------------------------ 14

6

In re Crescent Manufacturing

    122 B.R. 979 (Bankr. N.D. Ohio 1990) --------------------------------------------- 16

7

In re Gibson & Cushman Dredging Corp.

8

    101 B.R. 405(E.D. N.Y. 1989) ---------------------------------------------------- 14

9

In re Pine Run Trust, Inc.

10

    67 B.R. 432(Bankr. E.D. Pa. 1936) ----------------------------------- 15, 16, 17

11

In re Public Service Company of New Hampshire

    88 B.R. 521(Bankr. D.N.H. 1988) ----------------------------------------------- 14

12

In re Service Merchandise Co., Inc.

13

    256 B.R. 744 (Bankr. M.D. Tenn. 2000)------------------------------------------- 16

14

In re Trainer's, Inc.

15

    17 B.R. 246 (Bankr. E.D. Pa. 1982) ---------------------------------------------- 18

16

In re United Press International

    60 B.R. 265 (Bankr. D.D.C. 1986)------------------------------------------------- 18

17

In re Wisconsin Barge Line

18

    78 B.R. 946 (Bankr. E.D. Mo. 1987). ------------------------------------------- 15

19

STATUTES

20

11 U.S.C. § 305(a) ----------------------------------------------------------------------- 12

11 U.S.C. § 363 ------------------------------------------------------------------------ 4, 20

21

11 U.S.C. § 365 ---------------------------------------------------------------------------- 18

11 U.S.C. § 1107----------------------------------------------------------------------- 7, 22

22

11 U.S.C. § 1108 ---------------------------------------------------------------------- 7, 22

11 U.S.C. § 1112(b) -----------------------------------------------------------------11, 27

23

11 U.S.C. § 1121------------------------------------------------------------------------------2

24

11 U.S.C. § 1121(b) -------------------------------------------------------------- 12, 13, 14

11 U.S.C. § 1121(c)(3) ------------------------------------------------------ 2, 7, 13, 14, 22

25

11 U.S.C. § 1121(d) -----------------------------------------------------------------13, 14

11 U.S.C. § 1121(d)(1)------------------------------------------------------------------- 14

26

11 U.S.C. § 1121(d)(2)(A)------------------------------------------------------------------7

27

28

1

## RULES

2    Local Bankruptcy Rule 9013-1(a)(11) --------------------------------------------------------------- 2
    Local Bankruptcy Rule 9013-1(a)(7) ----------------------------------------------------------------- 2
3

4

## CONSTITUTIONAL PROVISIONS

    H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) ----------------------------------- 14, 15
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAKS, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case herein (the "Debtor"), hereby moves this Court (the "Motion") for a further order extending the Debtor's exclusive period to obtain acceptances to its chapter 11 plan of reorganization under 11 U.S.C. §1121 (c)(3) (now ending September 5, 2008) for four calendar months, to January 9, 2009.

This Motion is based upon this Notice of the Motion and Motion, 11 U.S.C. § 1121, Local Bankruptcy Rule 9013-1(a), the accompanying Memorandum of Points and Authorities and the Declaration of Daniel H. Reiss attached hereto, the entire record in this case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, if any, and any other evidence properly presented to the Court in support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that Local Bankruptcy Rule 9013-1(a)(7) requires that any opposition to the Motion be filed with the clerk of the Bankruptcy Court and served upon counsel for the Debtor at the address set forth in the upper left-hand corner of the first page hereof not later than fourteen (14) days prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(a)(11), the failure to timely file and serve an opposition to the Motion may be deemed by the Court to constitute consent to the relief requested in the Motion.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

(1)     granting the Motion in its entirety;

(2)     extending the Debtor's exclusive period to obtain acceptances of a chapter 11 plan to and including January 9, 2009; and

///

2

(3)    granting such other and further relief as the Court deems just and proper.

Dated: August 14, 2008

DAKS, LLC,
a California limited liability company,

By:

CRAIG RANKIN
DANIEL H. REISS
GIL HOPENSTAND
LEVENE, NEALE, BENDER, RANKIN
& BRILL L.L.P.
Attorneys for Chapter 11 Debtor
and Debtor in Possession

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Prior to the filing of this bankruptcy case, the managing member of DAKS, LLC, (the "Debtor"), Mr. Arnold Simon, was unable to cause the Debtor to sell exclusive Harbor Island real property (the "Harbor Island Property") now owned by the estate whose value is estimated to be in excess of $30 million. The Debtor filed its "Chapter 11 Plan of Reorganization" within its initial plan exclusivity on November 5, 2007 (the "Original Plan"), which provided for the sale of the real property for the benefit of creditors. The Original Plan, however, provided that the sale of the real property would be accomplished by a third-party plan administrator.

Following the filing of the Original Plan, a stipulation (discussed in more detail below) was reached by and among Mr. Simon, his former wife Debra Simon ("Mrs. Simon"), and the Debtor that provides for, among other things, a consensual sale of the Harbor Island Property under 11 U.S.C. § 363. To effectuate this stipulation, the Debtor filed its First Amended Chapter 11 Plan of Reorganization (the "Amended Plan") and accompanying disclosure statement on February 22, 2008. Both of the Debtor's Plans in this case provide for sale or other disposition of the real property in a manner that will maximize payments to creditors.

Following the filing of the Original Plan, YSA, LLC ("YSA") filed three separate motions (the "YSA Motions") seeking: (1) dismissal of the bankruptcy case, (2) remand of a lawsuit commenced in state court by YSA against the Debtor with respect to a purported agreement to sell the Harbor Island Property to YSA, and (3) relief from stay to proceed with an arbitration instituted in connection with aforementioned litigation. Aside from the substantive issues of YSA's claim, the Debtor and YSA have strenuously litigated whether or to what extent YSA's claims against this bankruptcy estate should be arbitrated in a pending

4

pre-petition arbitration as opposed to being fully determined in this Court. The Debtor and YSA also disagree on whether YSA, if it prevails, would be entitled to specific performance of a contract to purchase the Harbor Island Property.

After a number of hearings and extensive negotiations by and among the Debtor, Mrs. Simon and YSA, a stipulation was reached by the Debtor and YSA (the "YSA Stipulation") with respect to the highly problematic and complex procedural issues presented, including a resolution of the extent to which YSA's claim would be determined in the arbitration proceedings and how the available remedies (i.e., specific performance versus a damage claim – referred to in the YSA Stipulation as the "enforcement issues") would be determined and ultimately adjudicated. The YSA Stipulation was approved by this Court by order entered March 20, 2008.[1]

Although highly beneficial to the estate, the YSA Stipulation provides that the Debtor will not further prosecute the Amended Plan and Disclosure Statement pending the results of an agreed to arbitration and, if YSA obtains an award at the arbitration, an additional period of time while this Court adjudicates the enforcement issues relating to that arbitration award. Consistent with this agreement, YSA agreed to support this Motion by the Debtor to extend plan solicitation exclusivity. The Debtor sought, and was granted, continued exclusivity through September 5, 2008.

The Debtor's arbitration with YSA, LLC commenced as agreed by the parties on May 7, 2008 and concluded on May 9, 2008. Judge (Ret.) Judith M. Ryan, who serves as the arbitrator, took the matter under submission, and requested supplemental briefing from the parties. The supplemental closing briefs were due by June 30, 2008, with reply briefs due by

---

[1] The Debtor respectfully requests the Court to take judicial notice of the order approving the YSA Stipulation, which is entry number 128 on the Court's docket in this case.

5

July 11, 2008. Judge Ryan told the parties that she expected to issue her arbitration judgment by the end of July 2008.

The parties timely filed their supplemental arbitration briefs. However, instead of issuing a ruling in the arbitration, Judge Ryan requested the parties to make additional oral argument, which took place on August 7, 2008. Judge Ryan took the matter under submission after the further oral argument and stated that she expected to issue a ruling no later than mid-September.

The Debtor has taken this chapter 11 proceeding as close to a conclusion as possible, given the complex and highly contentious issues between the Debtor, Mrs. Simon and YSA. However, the Debtor is currently prevented from moving forward with the plan confirmation process as part of the Court-approved YSA Stipulation. Moreover, given the importance of the outcome of the Debtor's arbitration proceeding with YSA, the Debtor believes that it would be premature to file an amended disclosure statement and further amend its Amended Plan. It is appropriate that the Debtor retain its plan exclusivity while the YSA claim remains to be adjudicated, both to not penalize the Debtor for complying with the terms of the YSA Stipulation, as well as a practical matter due to the material impact the ultimate resolution of the YSA claim will have on this estate. After the close of the arbitration of the YSA claim and such other necessary proceedings in this Court thereafter, the Debtor must still obtain approval of the Disclosure Statement, and only after obtaining such approval can the Debtor then solicit acceptances of the Amended Plan. Due to the length of time inherent in the plan confirmation process, the requested extension for four calendar months to and including January 9, 2009 is

1    reasonable.[2]    Additionally, the time to solicit plan acceptances should be extended to and

2    including March 9, 2009.[3]

3

4    For these reasons and those set forth in detail below, the Debtor requests that the Court

5    permit an extension of plan exclusivity and an extension of time within which to solicit

6    acceptances to a plan under 11 U.S.C. §1121 (c)(3) to and including January 9, 2009 and March

7    9, 2009, respectively.

8    **II.**

9    **STATEMENT OF FACTS**

10    **A.    Background.[4]**

11

12    The Debtor commenced this bankruptcy case by filing a voluntary bankruptcy petition

13    under chapter 11 of the Bankruptcy Code on July 9, 2007 (the "Petition Date"). The Debtor

14    continues to manage its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and

15    1108. The Debtor's managing member is Mr. Arnold Simon ("Mr. Simon"). The Debtor was

16    formed in March 2001 for the primary purpose of buying and selling residential real property.

17    Since its formation, the Debtor has purchased four residential real properties for investment,

18    three of which have been sold.

19

20    The real property located at 18 Harbor Island, Newport Beach, California (the "Harbor

21    Island Property"), purchased in mid-2001 for $14 million, and the rights to a certain dock

22

23    ---
       [2]    Section 1121(d)(2)(A) does not allow a Debtor's plan exclusivity to be extended beyond 18 months from
       the petition date.  Since the Debtor sought voluntary bankruptcy relief on July 9, 2007, January 9, 2009 – exactly
       18 months later – is the last date to which to the Debtor's plan exclusivity may be extended
24    [3]    Section 1121(d)(2)(A) does not allow the Debtor's time to solicit acceptances of a plan to be extended
       beyond 20 months from the petition date.  Since the Debtor sought voluntary bankruptcy relief on July 9, 2007,
25    March 9, 2009 – exactly 20 months later – is the last date to which to the Debtor's time to solicit plan acceptances
       may be extended
26    [4]    The facts set forth in Sections II.A. – C. and portions of II.D. have been largely set forth in the Court record of
       this case, and are set forth herein again for purposes of completeness and to demonstrate the complexity of this
27    reorganization case.  See, e.g., Opposition To Motion By YSA, LLC To Dismiss Case As Bad Faith Filing;
       Declaration Of Arnold Simon In Support Thereof" filed by the Debtor on December 4, 2007, which is document
28    number 64 on the Court's docket in this case, of which the Court is requested to take judicial notice.

7

leased from the County of Orange (the "Lease") are the Debtor's only remaining real property assets. The Harbor Island Property is a very valuable residence, and its value has been estimated to be worth in excess of $30 million.

It is approximately 18,000 square feet, with multiple bedrooms and bathrooms, including a staff apartment with bedrooms and bathrooms. Other amenities include a secured, subterranean multiple car garage, an elevator, walk-in wine cellar, six fireplaces, a waterfront tile pool, a limestone outdoor barbeque, and the aforementioned large leased dock in Newport Harbor, which is the subject of the Lease. Mr. Simon's former wife, Mrs. Simon, lives alone in the Harbor Island Property and currently enjoys exclusive use and possession of the premises. Mrs. Simon is currently not paying any rent to the Debtor for her occupancy.

There is substantial equity in the Harbor Island Property. First Federal Bank ("First Federal") asserts a lien in the form of a first trust deed against the Harbor Island Property in the principal amount of approximately $5.9 million. The only other secured claim asserted against the Harbor Island Property of which the Debtor is aware is an alleged property tax lien held by Orange County for which an amended proof of claim was filed in the amount of approximately $163,000. Due to the tremendous amount of equity in the Harbor Island Property, the Debtor expects creditors of the estate to be paid in full with interest.

**B.** **The Debtor's Pre-Petition Attempts to Sell the Harbor Island Property And The Multiple Claims Relating Thereto.**

The Debtor acquired the Harbor Island Property precisely because it was such a beautiful residence and Mr. Simon believed that the Debtor would realize a good return on the investment. Consistent with the Debtor's business of investing in properties for resale, the Debtor listed the Harbor Island Property for sale in January 2002, only approximately six months after its purchase. When purchased, it was subject to a recorded first right of refusal

8

(the "First Right of Refusal"), held by Elizabeth C. Adams, Trustee of Carver Trust No. 1 dated September 22, 1988 and Leroy L. Carver III (collectively and individually, "Carver"). Carver filed a proof of claim in this case in the amount of $15,250,000 based on the First Right of Refusal (the "Carver Proof of Claim").[5]

Due to circumstances beyond its reasonable control, and in particular, an intervening family court action commenced by Mrs. Simon against Mr. Simon to which the Debtor is also a party, the Debtor's "hands" were literally tied such that it could not sell the Harbor Island Property. In early 2003, the Debtor and YSA entered into a purchase agreement with respect to the Harbor Island Property, and an escrow was opened in March 2003. After numerous offers and counter-offers, YSA unilaterally cancelled escrow on June 24, 2003. The Harbor Island Property then sat on the market for another six months. On January 14, 2004, YSA and the Debtor entered into another sales contract for the purchase price of $15,750,000.

On or about January 9, 2004, prior to the YSA purchase agreement, Mrs. Simon filed a Petition for Dissolution of Marriage (the "Dissolution Petition") commencing the family law matter (the "Family Court Matter") entitled In re Marriage of Simon, Case No. 04D000159, now pending in the Superior Court of the State of California, County of Orange (the "Family Court"). At the time the Dissolution Petition was filed, Mrs. Simon was living in the Harbor Island Property. By Family Court orders dated January 21, 2004 and February 20, 2004, Mrs. Simon was given exclusive use of the Harbor Island Property and Mr. Simon was enjoined from directly or indirectly (presumably, through the Debtor) disposing of the Harbor Island Property. The Debtor was then brought in as, and remains, a party to the Family Court Matter as a "Claimant" pursuant to the Court's order granting Mrs. Simon's motion for joinder on February 27, 2004.

---

[5]  The Court is respectfully requested to take judicial notice of the Carver Proof of Claim.

YSA then commenced the action entitled <u>YSA, LLC v. DAKS, LLC</u>, Case No. 05CC08045 on June 8, 2005 in the Superior Court for the State of California, County of Orange (the "Removed Action") seeking specific performance of the expired January 14, 2004 purchase agreement, damages for breach of said purchase agreement, and certain declaratory and/or injunctive relief. The Debtor removed the Removed Action to this Court by filing a removal petition on October 5, 2007. YSA filed a proof of claim on October 22, 2007 (the "YSA Proof of Claim".[6] Prior to the removal, the Removed Action had been ordered to arbitration, which was pending at the time of removal (the "YSA Arbitration"). In addition to the above contentions regarding the Harbor Island Property by YSA and Carver, Coldwell Banker Residential Brokerage ("Coldwell Banker") has filed a proof of claim in this bankruptcy case for commissions of $662,500 relating to the YSA purchase agreement.[7]

By that certain order on the "Stipulation Resolving Bifurcated Issues of Validity of Purported Prenuptial Agreement and for Handling of Certain Remaining Issues in the Case" entered on July 21, 2006 (the "Stipulated Order"), the Family Court prohibited the marketing of the Harbor Island Property for sale. The Stipulated Order provides at page 4, ¶ 9:

> "Pending the final resolution of the division of property, the Respondent [Arnold Simon] shall not seek, nor shall he permit DAKS to seek, the sale or showing of the Harbor Island residence without the prior written consent of the Petitioner [Debra Simon]."

## C.   Litigation With Cynthia Rocker And Other Claims Against The Debtor.

In addition to the foregoing claims against the Debtor, the Debtor has several other claimants and creditors. The Debtor sold the real property referred to in these proceedings as the "Skyview Property" on or about November 11, 2004, for a total sale price of $4,125,000.

---

[6] The Court is respectfully requested to take judicial notice of the YSA proof of claim.
[7] The Court is respectfully requested to take judicial notice of the Coldwell Banker proof of claim.

10

The sale of the Skyview Property gave rise to a litigation claim brought by Cynthia Rocker. Ms. Rocker claims that Mr. Simon and/or the Debtor purchased the Skyview Property as a gift to Ms. Rocker; that Mr. Simon and/or the Debtor failed to effectuate the appropriate documentation to transfer title of the property to her name; that Mr. Simon and/or the Debtor thereafter improperly sold the property; and that Mr. Simon and/or the Debtor refused to turn over the sale proceeds to her. Ms. Rocker has filed a proof of claim in this case in the amount of \$2.5 million.[8]  By way of the aforementioned Stipulated Order, the Court ordered that all proceeds of the Skyview Property sale be paid to Mrs. Simon. Due to the Family Court order, the Debtor has not received any proceeds from the sale of the Skyview Property.

Other parties who assert claims against the Debtor include pre-petition counsel Waldron & Olsen for legal fees, the Orange County tax collector with respect to personal and real property taxes, as well as for amounts under the Lease, the Franchise Tax Board, other state taxing agencies, the Harbor Island homeowner's association, and Mr. Simon personally.

**D.**    **The Debtor Has Timely Filed Two Chapter 11 Plans That Provide For The Sale of the Harbor Island Property; However, Due To Due The Approved Stipulation With YSA, The Debtor Is Currently Prevented From Prosecuting Its Amended Plan And Disclosure Statement .**

The Debtor, Mr. Simon, and Mrs. Simon reached a written agreement that was approved by the Family Court on November 29, 2007 that provides for the consensual and orderly sale of the Harbor Island Property (the "Sale Stipulation"). Based on its ability to sell the property unfettered by the prior Family Court orders, the Debtor filed its Amended Plan and Disclosure Statement on February 28, 2008 which, as did the Original Plan, provides for the sale of the Harbor Island Property to fund payments to creditors. The Disclosure Statement

---

[8] The Court is respectfully requested to take judicial notice of the Rocker proof of claim.

11

was initially set for April 9, 2008. However, as discussed immediately below, due to the YSA Motions and the partial resolution of the issues therein by way of a stipulation between the Debtor and YSA, the Debtor's further prosecution of the Disclosure Statement and Amended Plan is currently "on hold".

The YSA Motions consisted of three motions all filed in November 2007: (1) a Motion To Remand State Action And For Abstention In Favor Of Un-Removed Pending Binding Arbitration Between YSA, LLC And DAKS, LLC; (2) a Motion For Relief From Stay; and (3) Motion to Dismiss Case As Bad Faith Filing Pursuant to 11 U.S.C. § 1112(b) or 11 U.S.C. § 305(a) (the "Motion to Dismiss"). By way of its motion to remand and motion for relief from stay, YSA asserted that the stayed YSA Arbitration should proceed immediately. The Debtor countered that, among other things, the filing of the YSA Proof of Claim gave this Court the exclusive core jurisdiction to decide all issues relevant to the Removed Action and the YSA Arbitration. The Debtor vigorously opposed all of the YSA Motions. Due to the complexity of the issues raised by the Debtor and YSA, the Court requested supplemental briefing on multiple issues after the initial hearing, and held a second hearing at which the parties requested a continued third hearing to give the parties an additional opportunity to resolve as many issues as possible. After extensive negotiations, the Debtor and YSA entered into a stipulation that, among other things: (1) established a procedural rubric to resolve YSA's substantive claims through the YSA Arbitration; (2) reserved to this Court the determination of the appropriate remedy should YSA obtain an arbitration award; (3) caused YSA to withdraw its earlier-filed opposition to the employment of real estate brokers for the Harbor Island Property; (4) caused YSA to withdraw its Motion to Dismiss, subject to be refiling under limited circumstances; and (5) restrained the Debtor from pursuing its newly filed Disclosure Statement and Amended

Plan pending the outcome of the YSA Arbitration and enforcement related proceedings conducted before this Court. The YSA Stipulation was approved on March 20, 2008.

Since the approval of the YSA Stipulation, and due to the Sale Stipulation, the Debtor has moved forward as far as possible (within the terms of the YSA Stipulation) to market the Harbor Property for sale. After extensive negotiations with potential real estate brokers and Mrs. Simon and her counsel, the Debtor reached an agreement with two prestigious real estate brokerages - Willis Allen Real Estate ("Willis Allen") and HOM Real Estate Group ("HOM") - to act as real estate brokers for this bankruptcy estate. The Debtor filed an application, and obtained this Court's approval, to employ Willis Allen and HOM. The listing agreement with Willis Allen and HOM provides that the Harbor Property will be listed at a sales price of $34 million.

Due to no fault of its own, the Debtor's progress toward a sale of the Harbor Island Property was diverted by the YSA Motions and the resolution of many issues through the YSA Stipulation. Moreover, the arbitration commenced as agreed by the parties on May 7, 2008 and, after extensive briefing and oral argument, Judge Ryan took the matter under submission. The Debtor still is awaiting her ruling. Therefore, the Debtor has not delayed in prosecuting this chapter 11 case toward emergence through a confirmed chapter 11 plan.

### III.

### DISCUSSION

**A.      The Court Has Authority To Extend The Debtor's Exclusive Periods To File A Plan And Obtain Acceptances Thereof.**

Pursuant to Sections 1121(b) and (c)(3) of the Bankruptcy Code, a chapter 11 debtor has the exclusive right, for a period of 120 days following the filing of the petition, to file a plan of reorganization, and to thereafter obtain acceptances to any plan so filed for a period of an additional 60 days. As set forth above, the Debtor filed the Plan within the initial plan

13

1    exclusivity period under 11 U.S.C. § 1121(b). Therefore, the Debtor's initial motion to extend

2    exclusivity, granted by the Court, only sought an extension of its exclusive period to obtain

3

4    acceptances under 11 U.S.C. § 1121(c)(3). Likewise, this Motion only seeks an extension of

5    its exclusive period under 11 U.S.C. § 1121(c)(3).

6        Section 1121(d) of the Bankruptcy Code allows the Court to extend or reduce these time

7    periods for cause. Section 1121(d) provides, in pertinent part, as follows:

8

9            "(d)(1) Subject to paragraph (2), on request of a party in interest made
            within the respective periods specified in subsections (b) and (c) of this
10        section and after notice and a hearing, the court may for cause reduce or
            increase the 120-day period [exclusivity period for filing a plan of
11        reorganization] or the 180-day period [exclusivity period for obtaining
            acceptances of the plan] referred to in this section.
12

13    11 U.S.C. § 1121(d)(1).

14        The decision of whether to grant a request to extend or shorten the exclusivity periods

15    lies within the sound discretion of the bankruptcy judge. In re AmKo Plastics, Inc., 197 B.R.
16

17    74, 77 (Bankr. S.D. Ohio 1996); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409

18    (Bankr. E.D. N.Y. 1989). The "cause" standard referred to in Section 1121 has been referred to

19    as a general standard that allows the bankruptcy court "maximum flexibility to suit various

20    types of reorganization proceedings." In re Public Service Company of New Hampshire, 88

21    B.R. 521, 534 (Bankr. D.N.H. 1988).

22        The Bankruptcy Code does not define "cause" or establish formal criteria for extensions
23

24    of the exclusivity periods. Consistent with a balanced, integrated approach to reorganizations

25    under chapter 11, Congress contemplated that bankruptcy courts would apply the exclusivity

26    provisions flexibly so as to promote the orderly, consensual and successful reorganization of a

27    debtor's affairs. See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) [hereinafter

28    "House Report"]. Appropriate "cause" justifying extensions of the exclusivity periods should

be interpreted in the context of the overall purposes of chapter 11 and the means Congress established for accomplishing them. Congress recognized that a debtor must have a reasonable time to formulate and negotiate a plan of reorganization. Denying a debtor an exclusive period to propose and confirm a plan could dissuade a debtor from choosing chapter 11 and encourage creditors to act unilaterally. House Report at 231-32. See also, In re Pine Run Trust, Inc., 67 B.R. 432, 434 (Bankr. E.D. Pa. 1936) (exclusivity determinations should balance creditor and debtor interests in favor of reorganization).

The Debtor believes that good cause exists to extend the Debtor's plan exclusivity period as requested herein. As described in detail above, the Debtor has put an enormous amount of effort into, among other things, setting the stage for an effective reorganization that pays creditors out of the proceeds of a sale of the Harbor Island Property. After years of efforts pre-petition to dispose of the Harbor Island Property, the milestone represented by the Sale Stipulation, the efficiencies hoped to be achieved by the YSA Stipulation, the employment of real estate professional and the pending ruling by Judge Ryan in the arbitration with YSA, the Debtor is finally able to move decisively towards confirming a plan of reorganization in accordance with the timetable set forth in the YSA Stipulation.

**B.      The Size And Complexity Of The Debtor's Case Support Extensions Of The Debtor's Plan Exclusivity Periods.**

Congress expressly recognized the size and complexity of a chapter 11 case as examples of "cause" justifying an extension of the exclusivity periods by stating that "cause might include an unusually large . . . case . . . .," House Report, supra, at 406, and "[i]f an unusually large company were to seek reorganization under Chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." Id. at 232 (emphasis added); In re Wisconsin Barge Line, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987).

Courts have considered the size and complexity of the debtor's as constituting cause for extending a debtor's exclusivity periods. In re Service Merchandise Co., Inc., 256 B.R. 744, 751-52 (Bankr. M.D. Tenn. 2000); In re Crescent Manufacturing, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990).

As set forth above, this case deals with the administration of an asset whose value exceeds $30 million amid a number of competing claims and alleged interests. Although the strategy to emerge from chapter 11 essentially involves the disposition of a single asset – the Harbor Island Property – this case is extremely complicated due to the need to adjudicate a number of competing claims and alleged interests that will necessitate substantial legal and factual development in connection with their resolution. This is borne out by the three voluminous YSA Motions, as well as the Carver Claim, the Coldwell Banker Claim, and the impact on this case of the Family Court Matter. In addition, the litigation with YSA has also been further complicated by the procedural issues relating to the litigation of the Removal Action and YSA motion to remand that lawsuit.

Continued exclusivity to gain acceptance to an amended plan will help ensure that a competing plan by another party does not add to the complexity of this case, and divert the Debtor's resources from moving forward with an orderly sale of the Harbor Island Property, and prosecuting a plan that will pay creditors in full with interest in the most efficient way possible.

**C.     The Extension Requested Herein Is In Good Faith, And Not For The Purpose Of Pressuring Creditors To Accede To Plan Terms.**

Courts have found cause to justify an extension of a chapter 11 debtor's exclusivity periods where there is no evidence that an extension is being sought for purposes of pressuring creditors into acceding to a debtor's reorganization demands. See, In re Pine Run Trust, Inc.,

supra. The Debtor's request herein is being made in good faith and is not being made for the purpose of pressuring creditors into acceding to certain plan terms. The Debtor is motivated to efficiently finally adjudicate all claims relating to the Harbor Island Property in a single forum unfettered by concerns that a third party may try to file a competing plan. The Debtor does not have any interest in delaying its bankruptcy case any longer than absolutely necessary. Now that the Harbor Island Property can be sold without the concern of interference by the Family Court, no stakeholder benefits from staying in chapter 11 longer than necessary.

However, the YSA Stipulation approved by the Court provides that the Debtor cannot further prosecute the Amended Plan and Disclosure statement pending the determination of the enforcement issues of an arbitration award by this Court. Consistent with this agreement to not prosecute the Amended Plan and Disclosure Statement, YSA has agreed to not oppose further requests by the Debtor to extend plan exclusivity.

The Debtor has taken this chapter 11 proceeding as close to a conclusion as possible, given the complex and highly contentious issues between the Debtor, Mrs. Simon and YSA. However, the Debtor is temporarily prevented from moving forward with the plan confirmation process as part of the Court-approved YSA Stipulation. It is appropriate that the Debtor retain its plan exclusivity while the YSA claim remains to be adjudicated, both to not penalize the Debtor for complying with the terms of the YSA Stipulation, as well as a practical matter due to the material impact the ultimate resolution of the YSA claim will have on this estate. After the close of the arbitration of the YSA claim and such other necessary proceedings in this Court thereafter, the Debtor must still obtain a new hearing date for approval of the Disclosure Statement, and only after obtaining such approval can the Debtor then solicit acceptances of the Amended Plan. Due to the length of time inherent in the plan confirmation process, the requested extension for four calendar months to and including January 9, 2009 is reasonable.

Additionally, the time to solicit plan acceptances should be extended to and including March 9, 2009.

### D.    Progress Towards Reorganization And Proper Motives Warrant An Extension Of The Debtor's Plan Exclusivity Periods.

Courts have recognized that the diligence of management and proper administration of the case are additional factors supporting an extension of the exclusivity periods. See, In re United Press International, supra; In re Trainer's, Inc., 17 B.R. 246, 247 (Bankr. E.D. Pa. 1982). The Debtor has properly administered this chapter 11 case. In addition to all of the progress towards reorganization set forth above, the Debtor has substantially complied with all of the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and is current with respect to all payments to, and all reporting requirements of, the Office of the United States Trustee. The Debtor timely filed its full schedules, statement of financial affairs and Seven-Day Package disclosures. The Debtor promptly obtained a bar date of October 31, 2007 and has commenced the analysis of the timely proofs of claim filed. The Debtor has filed an objection to the YSA claim by way of an adversary proceeding. The Debtor also filed a motion to assume the Lease under 11 U.S.C. § 365 to ensure that its value is maintained for the benefit of all creditors. The Debtor's § 341(a) meeting has been concluded, and the Debtor has timely filed its initial chapter 11 plan.

Under these circumstances, the Debtor respectfully submits that the Court should extend the Debtor's exclusivity period for obtaining acceptances of its chapter 11 plan with the confidence that the Debtor is in compliance with the requirements that are a condition to the Debtor's maintaining control of the plan process in this case.

/ / /

/ / /

18

# IV.

## CONCLUSION

For all of the reasons stated above, the Debtor respectfully requests that the Court enter an order:

(1)    granting the Motion in its entirety;

(2)    extending the Debtor's exclusive period to obtain acceptances of a chapter 11 plan for four calendar months to January 9, 2009; and

(3)    granting such other and further relief as the Court deems just and proper.

Dated: August 14, 2008

DAKS, LLC,
a California limited liability company,


By:
CRAIG RANKIN
DANIEL H. REISS
GIL HOPENSTAND
LEVENE, NEALE, BENDER, RANKIN
& BRILL L.L.P.
Attorneys for Chapter 11 Debtor
and Debtor in Possession

## DECLARATION OF DANIEL H. REISS

I, Daniel H. Reiss, declare as follows:

1.    I am a partner of the law firm of Levene, Neale, Bender, Rankin & Brill, L.L.P., counsel for DAKS, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case. The statements made herein are of my own personal knowledge in my capacity as one of the attorneys handling this chapter 11 case, as well as upon information and belief based on my review of the Court record, upon which I rely. See, e.g., Opposition To Motion By YSA, LLC To Dismiss Case As Bad Faith Filing; Declaration Of Arnold Simon In Support Thereof" filed by the Debtor on December 4, 2007, which is document number 64 on the Court's docket in this case, of which the Court is requested to take judicial notice. If called upon, I could and would competently testify as set forth herein.

2.    Prior to the filing of this bankruptcy case, the managing member of DAKS, LLC, (the "Debtor"), Mr. Arnold Simon, was unable to cause the Debtor to sell exclusive Harbor Island real property (the "Harbor Island Property") now owned by the estate whose value I am informed is estimated to be in excess of $30 million. The Debtor filed its "Chapter 11 Plan of Reorganization" within its initial plan exclusivity on November 5, 2007 (the "Original Plan"), which provided for the sale of the real property for the benefit of creditors. The Original Plan, however, provided that the sale of the real property would be accomplished by a third-party plan administrator.

3.    Following the filing of the Original Plan, a stipulation (discussed in more detail below) was reached by and among Mr. Simon, his former wife Debra Simon ("Mrs. Simon"), and the Debtor that provides for, among other things, a consensual sale of the Harbor Island Property under 11 U.S.C. § 363.    To effectuate this stipulation, the Debtor filed its First

Amended Chapter 11 Plan of Reorganization (the "Amended Plan") and accompanying disclosure statement on February 22, 2008. Both of the Debtor's Plans in this case provide for sale or other disposition of the real property in a manner that will maximize payments to creditors.

4.    Following the filing of the Original Plan, YSA, LLC ("YSA") filed three separate motions (the "YSA Motions") seeking: (1) dismissal of the bankruptcy case, (2) remand of a lawsuit commenced in state court by YSA against the Debtor with respect to a purported agreement to sell the Harbor Island Property to YSA, and (3) relief from stay to proceed with an arbitration instituted in connection with aforementioned litigation. Aside from the substantive issues of YSA's claim, the Debtor and YSA have strenuously litigated whether or to what extent YSA's claims against this bankruptcy estate should be arbitrated in a pending pre-petition arbitration as opposed to being fully determined in this Court. The Debtor and YSA also disagree on whether YSA, if it prevails, would be entitled to specific performance of a contract to purchase the Harbor Island Property.

5.    After a number of hearings and extensive negotiations by and among the Debtor, Mrs. Simon and YSA, a stipulation was reached by the Debtor and YSA (the "YSA Stipulation") with respect to the highly problematic and complex procedural issues presented, including a resolution of the extent to which YSA's claim would be determined in the arbitration proceedings and how the available remedies (i.e., specific performance versus a damage claim – referred to in the YSA Stipulation as the "enforcement issues") would be determined and ultimately adjudicated.    The YSA Stipulation was approved by this Court by order entered March 20, 2008.[9]

---

[9]    The Debtor respectfully requests the Court to take judicial notice of the order approving the YSA Stipulation, which is entry number 128 on the Court's docket in this case.

21

6.      Although highly beneficial to the estate, the YSA Stipulation provides that the Debtor will not further prosecute the Amended Plan and Disclosure Statement pending the results of an agreed to arbitration and, if YSA obtains an award at the arbitration, an additional period of time while this Court adjudicates the enforcement issues relating to that arbitration award.  Consistent with this agreement, YSA has agreed to support this Motion by the Debtor to extend plan solicitation exclusivity.   The Debtor sought, and was granted, continued exclusivity through September 5, 2008.

7.      The Debtor's arbitration with YSA, LLC commenced as agreed by the parties on May 7, 2008 and concluded on May 9, 2008.  Judge (Ret.) Judith M. Ryan, who serves as the arbitrator, took the matter under submission, and requested supplemental briefing from the parties.  The supplemental closing briefs were due by June 30, 2008, with reply briefs due by July 11, 2008.  Judge Ryan told the parties that she expected to issue her arbitration judgment by the end of July 2008.

8.      The parties timely filed their supplemental arbitration briefs.  However, instead of issuing a ruling in the arbitration, Judge Ryan requested the parties to make additional oral argument, which took place on August 7, 2008.  Judge Ryan took the matter under submission after the further oral argument and stated that she expected to issue a ruling no later than mid-September.

9.      The Debtor still is prevented from moving forward with the plan confirmation process as part of the Court-approved YSA Stipulation.  After the close of the arbitration of the YSA claim and such other necessary proceedings in this Court thereafter, the Debtor must still obtain approval of the Disclosure Statement, and only after obtaining such approval can the Debtor then solicit acceptances of the Amended Plan.

10.    For these reasons and those set forth in detail below, the Debtor requests that the Court permit an extension of exclusivity within which to solicit acceptances to a plan under 11 U.S.C. §1121 (c)(3) to and including January 9, 2009.

11.    The Debtor commenced this bankruptcy case by filing a voluntary bankruptcy petition under chapter 11 of the Bankruptcy Code on July 9, 2007 (the "Petition Date"). The Debtor continues to manage its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The Debtor's managing member is Mr. Arnold Simon ("Mr. Simon"). The Debtor was formed in March 2001 for the primary purpose of buying and selling residential real property. Since its formation, I am informed that the Debtor has purchased four residential real properties for investment, three of which have been sold.

12.    The real property located at 18 Harbor Island, Newport Beach, California (the "Harbor Island Property"), purchased in mid-2001 for $14 million, and the rights to a certain dock leased from the County of Orange (the "Lease") are the Debtor's only remaining real property assets.    I am informed that it is approximately 18,000 square feet, with multiple bedrooms and bathrooms, including a staff apartment with bedrooms and bathrooms. Other amenities include a secured, subterranean multiple car garage, an elevator, walk-in wine cellar, six fireplaces, a waterfront tile pool, a limestone outdoor barbeque, and the aforementioned large leased dock in Newport Harbor, which is the subject of the Lease. Mr. Simon's former wife, Mrs. Simon, lives alone in the Harbor Island Property and currently enjoys exclusive use and possession of the premises. Mrs. Simon is currently not paying any rent to the Debtor for her occupancy.

13.    Based on the estimated value, there substantial equity in the Harbor Island Property. First Federal Bank ("First Federal") asserts a lien in the form of a first trust deed against the Harbor Island Property in the principal amount of approximately $5.9 million. The

only other secured claim asserted against the Harbor Island Property of which the Debtor is aware is an alleged property tax lien held by Orange County for which an amended proof of claim was filed in the amount of approximately $163,000. Due to the tremendous amount of equity in the Harbor Island Property, the Debtor expects creditors of the estate to be paid in full with interest.

14. The Debtor acquired the Harbor Island Property precisely because it was such a beautiful residence and Mr. Simon believed that the Debtor would realize a good return on the investment. Consistent with the Debtor's business of investing in properties for resale, the Debtor listed the Harbor Island Property for sale in January 2002, only approximately six months after its purchase. When purchased, it was subject to a recorded first right of refusal (the "First Right of Refusal"), held by Elizabeth C. Adams, Trustee of Carver Trust No. 1 dated September 22, 1988 and Leroy L. Carver III (collectively and individually, "Carver"). Carver filed a proof of claim in this case in the amount of $15,250,000 based on the First Right of Refusal (the "Carver Proof of Claim").[10]

15. Due to circumstances beyond its reasonable control, and in particular, an intervening family court action commenced by Mrs. Simon against Mr. Simon to which the Debtor is also a party, the Debtor's "hands" were literally tied such that it could not sell the Harbor Island Property. In early 2003, the Debtor and YSA entered into a purchase agreement with respect to the Harbor Island Property, and an escrow was opened in March 2003. After numerous offers and counter-offers, YSA unilaterally cancelled escrow on June 24, 2003. The Harbor Island Property then sat on the market for another six months. On January 14, 2004, YSA and the Debtor entered into another sales contract for the purchase price of $15,750,000.

---

[10] The Court is respectfully requested to take judicial notice of the Carver Proof of Claim.

16.     On or about January 9, 2004, prior to the YSA purchase agreement, Mrs. Simon filed a Petition for Dissolution of Marriage (the "Dissolution Petition") commencing the family law matter (the "Family Court Matter") entitled In re Marriage of Simon, Case No. 04D000159, now pending in the Superior Court of the State of California, County of Orange (the "Family Court"). At the time the Dissolution Petition was filed, Mrs. Simon was living in the Harbor Island Property. By Family Court orders dated January 21, 2004 and February 20, 2004, Mrs. Simon was given exclusive use of the Harbor Island Property and Mr. Simon was enjoined from directly or indirectly (presumably, through the Debtor) disposing of the Harbor Island Property. The Debtor was then brought in as, and remains, a party to the Family Court Matter as a "Claimant" pursuant to the Court's order granting Mrs. Simon's motion for joinder on February 27, 2004.

17.     YSA then commenced the action entitled YSA, LLC v. DAKS, LLC, Case No. 05CC08045 on June 8, 2005 in the Superior Court for the State of California, County of Orange (the "Removed Action") seeking specific performance of the expired January 14, 2004 purchase agreement, damages for breach of said purchase agreement, and certain declaratory and/or injunctive relief. The Debtor removed the Removed Action to this Court by filing a removal petition on October 5, 2007. YSA filed a proof of claim on October 22, 2007 (the "YSA Proof of Claim".[11] Prior to the removal, the Removed Action had been ordered to arbitration, which was pending at the time of removal (the "YSA Arbitration"). In addition to the above contentions regarding the Harbor Island Property by YSA and Carver, Coldwell Banker Residential Brokerage ("Coldwell Banker") has filed a proof of claim in this bankruptcy case for commissions of $662,500 relating to the YSA purchase agreement.[12]

---

[11] The Court is respectfully requested to take judicial notice of the YSA proof of claim.
[12] The Court is respectfully requested to take judicial notice of the Coldwell Banker proof of claim.

1     18.    By that certain order on the "Stipulation Resolving Bifurcated Issues of Validity

2   of Purported Prenuptial Agreement and for Handling of Certain Remaining Issues in the Case"

3   entered on July 21, 2006 (the "Stipulated Order"), the Family Court prohibited the marketing of

4   the Harbor Island Property for sale. The Stipulated Order provides at page 4, ¶ 9:

5

6              "Pending the final resolution of the division of property, the

7              Respondent [Arnold Simon] shall not seek, nor shall he permit DAKS

8              to seek, the sale or showing of the Harbor Island residence without the

9              prior written consent of the Petitioner [Debra Simon]."

10

11    19.    In addition to the foregoing claims against the Debtor, the Debtor has several

12  other claimants and creditors.    The Debtor sold the real property referred to in these

13  proceedings as the "Skyview Property" on or about November 11, 2004, for a total sale price of

14  $4,125,000.    The sale of the Skyview Property gave rise to a litigation claim brought by

15  Cynthia Rocker. Ms. Rocker claims that Mr. Simon and/or the Debtor purchased the Skyview

16  Property as a gift to Ms. Rocker; that Mr. Simon and/or the Debtor failed to effectuate the

17  appropriate documentation to transfer title of the property to her name; that Mr. Simon and/or

18  the Debtor thereafter improperly sold the property; and that Mr. Simon and/or the Debtor

19  refused to turn over the sale proceeds to her. Ms. Rocker has filed a proof of claim in this case

20  in the amount of $2.5 million.[13]    By way of the aforementioned Stipulated Order, the Court

21  ordered that all proceeds of the Skyview Property sale be paid to Mrs. Simon.    Due to the

22  Family Court order, the Debtor has not received any proceeds from the sale of the Skyview

23  Property.

24

25    20.    Other parties who assert claims against the Debtor include pre-petition counsel

26  Waldron & Olsen for legal fees, the Orange County tax collector with respect to personal and

27

28
_____
[13] The Court is respectfully requested to take judicial notice of the Rocker proof of claim.

26

real property taxes, as well as for amounts under the Lease, the Franchise Tax Board, other state taxing agencies, the Harbor Island homeowner's association, and Mr. Simon personally.

21. The Debtor, Mr. Simon, and Mrs. Simon reached a written agreement that was approved by the Family Court on November 29, 2007 that provides for the consensual and orderly sale of the Harbor Island Property (the "Sale Stipulation"). Based on its ability to sell the property unfettered by the prior Family Court orders, the Debtor filed its Amended Plan and Disclosure Statement on February 28, 2008 which, as did the Original Plan, provides for the sale of the Harbor Island Property to fund payments to creditors. The Disclosure Statement was initially set for April 9, 2008. However, as discussed immediately below, due to the YSA Motions and the partial resolution of the issues therein by way of a stipulation between the Debtor and YSA, the Debtor's further prosecution of the Disclosure Statement and Amended Plan is currently "on hold".

22. The YSA Motions consisted of three motions all filed in November 2007: (1) a Motion To Remand State Action And For Abstention In Favor Of Un-Removed Pending Binding Arbitration Between YSA, LLC And DAKS, LLC; (2) a Motion For Relief From Stay; and (3) Motion to Dismiss Case As Bad Faith Filing Pursuant to 11 U.S.C. § 1112(b) or 11 U.S.C. § 305(a) (the "Motion to Dismiss"). By way of its motion to remand and motion for relief from stay, YSA asserted that the stayed YSA Arbitration should proceed immediately. The Debtor countered that, among other things, the filing of the YSA Proof of Claim gave this Court the exclusive core jurisdiction to decide all issues relevant to the Removed Action and the YSA Arbitration. The Debtor vigorously opposed all of the YSA Motions. Due to the complexity of the issues raised by the Debtor and YSA, the Court requested supplemental briefing on multiple issues after the initial hearing, and held a second hearing at which the parties requested a continued third hearing to give the parties an additional opportunity to

resolve as many issues as possible. After extensive negotiations, the Debtor and YSA entered into a stipulation that, among other things: (1) established a procedural rubric to resolve YSA's substantive claims through the YSA Arbitration; (2) reserved to this Court the determination of the appropriate remedy should YSA obtain an arbitration award; (3) caused YSA to withdraw its earlier-filed opposition to the employment of real estate brokers for the Harbor Island Property; (4) caused YSA to withdraw its Motion to Dismiss, subject to be refiling under limited circumstances; and (5) restrained the Debtor from pursuing its newly filed Disclosure Statement and Amended Plan pending the outcome of the YSA Arbitration and enforcement related proceedings conducted before this Court. The YSA Stipulation was approved on March 20, 2008.

23. Since the approval of the YSA Stipulation, and due to the Sale Stipulation, the Debtor has moved forward as far as possible (within the terms of the YSA Stipulation) to market the Harbor Property for sale. After extensive negotiations with potential real estate brokers and Mrs. Simon and her counsel, the Debtor employed two prestigious real estate brokerages - Willis Allen Real Estate ("Willis Allen") and HOM Real Estate Group ("HOM") - as real estate brokers for this bankruptcy estate. The listing agreement with Willis Allen and HOM provides that the Harbor Property will be listed at a sales price of $34 million.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

28

24.    Due to no fault of its own, the Debtor's progress toward a sale of the Harbor Island Property was diverted by the YSA Motions, the resolution of many issues through the YSA Stipulation, and the arbitration with YSA. Therefore, the Debtor has not delayed in prosecuting this chapter 11 case toward emergence through a confirmed chapter 11 plan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct or to the best of my knowledge where indicated that such statements are based upon information and belief.

Executed this 14th day of August, 2008 in Los Angeles, California.

DANIEL H. REISS

29

**PROOF OF SERVICE**
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

   I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

   On August 15, 2008, I served the foregoing document(s) described as:

NOTICE OF MOTION AND MOTION BY DEBTOR AND DEBTOR IN POSSESSION TO EXTEND EXCLUSIVE PERIOD TO OBTAIN ACCEPTANCES TO CHAPTER 11 PLAN; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DANIEL H. REISS IN SUPPORT THEREOF

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

SEE ATTACHED SERVICE LIST

 X  (By Mail) I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail. Executed on August 15, 2008 at Los Angeles, California.

   (By Federal Express/Overnight Mail) I caused such envelope to be delivered by Federal Express (or Express Mail), next business day delivery to the offices of those so designated on the attached list. Executed on August ___, 2008, at Los Angeles, California.

   (By Facsimile) I caused said document to be sent via facsimile to the offices of the addressees so designated on the attached list. Executed on August ___, 2008, at Los Angeles, California.

   (By E-mail) I caused such envelope to be delivered via email to the offices of the United States Trustee. Executed on August ___, 2008, at Los Angeles, California.

   (By Personal service) I caused such envelope to be delivered by hand to the offices of the addressee so designated on the attached list. Executed on August ___, 2008 at Los Angeles, California.

   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

 X (Federal) I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

                  John Berwick

DAKS, LLC
c/o Arnold Simon
525 Seventh Avenue, Suite 307
New York, NY 10018

U.S. Trustee - Santa Ana
411 West Fourth Street
Suite 9041
Santa Ana, CA 92701-8000

American International Companies
Private Client Group
70 Pine Street, 21st Floor
New York, NY 10270

County of Orange
Dept. of Treasurer & Tax Collector
P.O. Box 1982
Santa Ana, CA 92702

County of Orange
RDMD - Attn: Catherine Lapid
300 North Flower Street
Santa Ana, CA 92702-4048

County of Orange
Environmental Management Agency
300 North Flower Street
Santa Ana, CA 92702-4048

Debra A. Simon
18 Harbor Island
Newport Beach, CA 92660

First Federal Bank of California
402 Wilshire Boulevard
Santa Monica, CA 90401

Franchise Tax Board
Special Procedures
P.O. Box 2952
Sacramento, CA 95812

Internal Revenue Service
Attn: Mia Bak
Insolvency I Stop 5022
300 N. Los Angeles St., #4062
Los Angeles, CA 90012-9903

Leroy L. Carver III
Pacific Farms USA, LP
P.O. Box 51505
Eugene, OR 97405

Rocker, Cynthia
c/o Peter Hermes - Hermes & Glavin
1880 Century Park East, Suite 914
Los Angeles, CA 90067

Waldron & Olson, LLP
26 Corporate Plaza Drive
Newport Beach, CA 92660

Harbor Island Community Association
c/o Total Property Management, Inc.
2 Corporate Park, Suite 200
Irvine, CA 92606

NJ Division of Taxation
Division of Taxation
P.O. Box 642
Trenton, NJ 08646-0642

RSN-Counsel for YSA, LLC
Paul Gale, Esq.
Ross, Dixon & Bell
5 Park Plaza, Suite 1200
Irvine, CA 92614-8592

RSN-Counsel for Debra A. Simon
Stephen Kolody, William Glucksman
Kolodny & Anteau
9100 Wilshire Blvd, 9th Fl., West Tower
Beverly Hills, CA 90212-3425

RSN-Counsel for Orange County Treasurer-Tax
Collector and County of Orange
James C. Harman, Senior Deputy
Orange County Counsel
333 West Santa Ana Blvd., Suite 407
PO Box 1379
Santa Ana, CA 92702-1379

RSN-Counsel for First Federal Bank of CA
Melissa Coyle, Esq.
Epport, Richman & Robbins, LLP
1875 Century Park Est, Suie 800
Los Angeles, CA 90067-2512

RSN-Counsel for Leroy L. Carver III
Glenn D. Dassoff, Esq./John Schafer, Esq.
Paul, Hastings, Janofsky & Walker LLP
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626

RSN-Counsel for YSA, LLC
Oscar Garza, Esq.
Kenneth A. Glowacki, Jr., Esq.
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412

RSN-Counsel to YSA, LLC
Jacqueline Le, Esq.
660 Newport Center Drive, Suite 650
Newport Beach, CA 92660

RSN-Counsel for Coldwell Banker Residential
Brokerage
Jeanne M. Jorgensen, Esq.
Page & Jorgensen LLP
5160 Campus Drive
Newport Beach, CA 92660

Special Litigation Counsel
Gary Waldron, Esq.
Waldron & Olson L.L.P.
26 Corporate Plaza Drive
Newport Beach, CA 92660

Proposed Professional
Richard H. Golubow, Esq.
WinthropCouchot, P.C.
660 Newport Center Drive, Suite 400
Newport Beach, CA 92660

Special Litigation Co-Counsel
Christopher Celentino, Esq.
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101

Real Estate Broker
Willis Allen Real Estate
Attn: Sarah Flynn-Tudor
1131 Wall Street
La Jolla, CA 92037

Real Estate Broker
Hom Real Estate Group
Attn: Vicki Lee
1200 Newport Center Drive, Suite 100
Newport Beach, CA 92660

Attorney for Harbor Island Community Ass.
Nathan T. McIntyre
McIntyre Law Group
P.O. Box 1098
Huntington Beach, CA 92647